SHUDE *v.* AMERICAN STATE BANK.

1. BILLS AND NOTES—STOP-PAYMENT ORDER—STATUTES.
   Under 3 Comp. Laws 1929, § 12075, stop-payment order relating to payment of check need not be in writing, but renewals thereof must be in writing.

2. SAME—BANKS AND BANKING—STOP-PAYMENT ORDER—TELEPHONE COMMUNICATION.
   Telephone communication to bank to stop payment on check, which communication is received by one of bank's officers or employees authorized to act in matter, in absence of refusal of bank to accept notice so given, is sufficient in law to protect drawer of check to which notice refers.

3. SAME—NOTICE TO CLERK SUFFICIENT.
   Bank's contention that notice to it by telephone to stop payment of check was ineffective because communication was received by bank clerk rather than by some bank official, is without merit, where both bank manager and clerk who received communication testified that said clerk had authority to take similar communications over telephone.

4. SAME—MISTAKE IN DATE.
   Mistake in date of check as given in stop-payment notice was of little or no consequence, where unauthorized payment was caused, not by said mistake, but instead by failure of bank to file stop-payment notice in maker's account.

5. SAME—NOTICE TO STOP PAYMENT MUST BE POSITIVE AND UN-QUALIFIED.
   If drawer of check wishes to impose upon bank duty of stopping payment, notice so to do must be positive and unqualified.

6. SAME—NOTICE SUFFICIENT IF CHECK IS DESCRIBED WITH REASON-ABLE ACCURACY.
   Notice to stop payment of check is sufficient, under statute, if check is described with reasonable accuracy (3 Comp. Laws 1929, § 12075).

Appeal from Wayne; Moll (Lester S.), J. Submitted April 18, 1933. (Docket No. 62, Calendar No. 37,081.) Decided June 5, 1933.

Assumpsit by Frank J. Shude against American State Bank to recover sums paid in violation of stop-payment order on check. Judgment for plaintiff. Defendant appeals. Affirmed.

*Frank C. Cook* and *John P. O'Hara* (*John F. Wagner,* of counsel), for plaintiff.

*Archer F. Ritchie* and *Howell S. White,* for defendant.

NORTH, J. Plaintiff had a commercial account in the Kercheval-Concord branch of the American State Bank. September 7, 1929, that being Saturday, he delivered his check for $2,000 to the payee, Ernest F. Light. Before banking hours the following Monday plaintiff, in manner hereinafter detailed, gave the bank an order to stop payment on the check. Notwithstanding such order, the bank later in the day certified the check and subsequently paid it. Plaintiff's suit is to recover from the bank the amount of the check. Judgment in the circuit court was for plaintiff, and defendant has appealed.

The check was drawn by plaintiff September 6, 1929, but dated August 6, 1929. Plaintiff, for the purpose of giving notice to stop payment, telephoned the bank about 8:45 a. m. September 9, 1929. A bank employee by the name of Donald Hoagland answered the telephone. Plaintiff inquired for the bank manager, the teller, and the bookkeeper, each of whom plaintiff knew, but was advised that none of the three was present at the bank. Then, without inquiring the

name of the one answering the phone, plaintiff according to his testimony informed Hoagland:

"That I wanted to stop payment *on my check,* and I wanted to know if he was in a capacity to take care of me; he said he really was. I asked him who was next in charge of the bank when the others were not there; he said he guessed he was. I said, 'This check is very important, and I want to make sure it can be stopped,' so he said he could take care of me. I said my name was Frank J. Shude, I spelled it out; I told him the check was made out to Mr. Light, I spelled Mr. Light's name out; I told him the date of the check was September 6th, for $2,000, No. 682, and I told him I.wanted absolutely to make sure this thing was going to go through because I told him it was very important, and I told him to tell Mr. Rood (the bank manager) to get in touch with me. I said, 'This is Mr. Shude from Anchor Steel;' and he said he would take care of it."

On the witness stand Mr. Hoagland admitted he informed plaintiff that he, Hoagland, could take the stop-payment order; but his testimony as to the telephone communication differs from that of plaintiff in that Mr. Hoagland stated plaintiff identified himself immediately as Frank J. Shude of the Anchor Steel & Engineering Company and requested stop payment of the $2,000 check, identifying it as above. Mr. Hoagland understood that the stop order applied to a check of the Anchor Steel & Engineering Company which also had an account at the bank. He filled out a blank stop order accordingly and gave it to the bookkeeper. The routine of the bank's practice was followed by making the record of the stop order in three separate documents. One form was for the signature of the party giving the order, one to be placed in the ledger and one in the statement of the

particular account. In accordance with Mr. Hoagland's understanding these records were made incident to the Anchor Steel & Engineering Company's account, not in plaintiff's account.

Shortly after the bank opened at 10 a. m. Monday, September 9, 1929, the payee presented plaintiff's check to the teller for certification. The teller inspected the condition of Shude's account, advised with Mr. Rood, the bank manager, and certified the check. As noted above, it was subsequently paid. At the time the check was presented and considered, Mr. Hoagland was not present, but instead was elsewhere in the bank engaged in his duties. Among his duties was that of posting statements and assisting tellers to balance the day's work by posting debits and credits on the teller's blotter. Later in the day when Mr. Hoagland was posting checks, he noticed the certification slip and called it to the teller's attention, saying "that is the check evidently that we had the stop payment against." He further testified he noticed the name was Ernest Light and the amount was $2,000 and it was signed by Frank J. Shude, and "I recognized that as the check by the payee and the amount." The witness had been in the employ of the American State Bank about three months, but in this particular branch only about two weeks previous to the transaction involved in this suit. The Anchor Steel & Engineering Company had had rather numerous transactions incident to its account in this branch of the American State Bank, much more so than plaintiff. Notwithstanding plaintiff's request that the manager call him at plaintiff's office at the Anchor Steel & Engineering Company, he was not present and could not have been reached at his office until three o'clock in the afternoon of the day in question. About that hour

plaintiff called the bank manager and thereupon learned that immediately following the opening of the bank plaintiff's check had been certified and that the stop order had been placed against the account of the Anchor Steel & Engineering Company instead of plaintiff's account.

Plaintiff's suit is in assumpsit for recovery of the $2,000 and interest thereon. The defense urged is "that no reasonable and seasonable and sufficient notice was ever given by plaintiff to defendant bank to stop payment." The sole question presented for review by appellant's brief is this: "Is the bank liable for failure to stop payment on plaintiff's personal check?" The sufficiency of the notice is assailed by appellant for the following reasons: (1) It was not in writing but instead by telephone communication; (2) it was given to a clerk rather than an officer of the bank, and outside of regular banking hours; and (3) in the notice the date of the check was erroneously given as September 6, 1929, when in fact it was dated August 6, 1929.

In this State there is statutory regulation of such stop-payment notice.

"No revocation, countermand or stop-payment order relating to the payment of any check or draft against an account of a depositor in any bank or trust company * * * shall remain in effect for more than six months after the service thereof on a bank, unless the same be renewed, *which, renewals shall be in writing* and which renewals shall be in effect for not more than six months from the date of service thereof on the bank or trust company, but such renewals may be made from time to time." 3 Comp. Laws 1929, § 12075.

Appellant contends that because of the reference in the statute to "service" of the notice on the bank

it must necessarily be inferred that the statute requires written notice. We think it obvious that the statute should not be so construed. It does not expressly provide that the first stop-payment notice shall be in writing, but does expressly provide that renewals thereof shall be in writing. Evidently the legislature was mindful of whether the notice should be in writing, and it did not so provide as to the original notice. To require service of the original notice in writing in many cases would cause such delay as to make it impossible to obtain the result sought to be accomplished by a stop-payment order, but this is not true of renewals of such orders. Therefore the legislature wisely provided that the notice should be in writing only as to renewals; but not as to original notices to stop payment. Any other construction would be wholly inconsistent with the statute as phrased. A telephone communication to a bank to stop payment, which communication is received by one of the bank's officers or employees authorized to act in the matter, in the absence of a refusal of the bank to accept the notice so given, is sufficient in law to protect the drawer of the check to which the notice refers.

"It is not unusual for a bank to enact and enforce a rule to the effect that stop orders must be written, but in the absence of a statute or of such rule, the notice may be given verbally, and in any form which definitely instructs the bank not to pay the check." Brady on Bank Checks (2d Ed.), p. 360.

There is no merit to appellant's contention that the notice given was ineffective because the telephone communication was received by a clerk of the bank rather than by some bank official, or to the objection that the telephone communication was outside of regular banking hours. Both the manager of the

bank and the clerk who received the telephone message testified that the clerk had authority to take similar instructions over the telephone, and when so doing to request the customer to appear personally at the bank and sign a printed form for stopping payment. In the instant case the check was presented very shortly after the bank opened. It is obvious that as a matter of precaution it was necessary to communicate the order to stop in advance of the opening of the bank at 10 a. m. There is testimony that the manager and other employees were supposed to be at the bank at 8:30 in the morning. Plaintiff's telephone communication was about 8:45. In any event, this question is of little importance in this case because the notice given by plaintiff was received and accepted by the bank, but inadvertently applied to the wrong account.

Concerning the mistake in the date of the check, we think, under the record in this case, the trial judge correctly concluded that this inaccuracy was of little or no consequence. The unauthorized payment of the check was not caused by the mistake in the date communicated to the bank, but instead by reason of the failure of the bank to file the stop-payment notice in plaintiff's account. If a drawer of a check wishes to impose upon the bank the duty of stopping payment, the notice so to do must be positive and unqualified. *Gaita* v. *Windsor Bank,* 251 N. Y. 152 (167 N. E. 203). Here there is no question that plaintiff gave a positive and unqualified order to stop payment. He gave the number of the check, the amount, and the name of the payee. The clerk to whom the notice was communicated instantly noted the nonobservance of this order when he discovered the memorandum of the certification. The bank cannot escape its obligation to stop payment

because of the discrepancy in the date. The law does not require a perfectly detailed description, but instead the notice is sufficient if the check is described with reasonable accuracy.

"To hold a bank to its liability for failure to stop payment of a check, the stop-payment notice should be positive and unqualified. It must be explicit, and describe the check with reasonable accuracy. Under the negotiable instruments act, any act of the drawer of a check which conveys to the bank, before certification, definite instruction to stop payment, is sufficient for that purpose. Notice to stop payment must be given to the proper officer of the bank, and in seasonable time. The notice may be either written or verbal, and may be given by telegraph or telephone." 5 Michie, Banks and Banking, p. 357.

Notwithstanding there is some conflict in the testimony, we are satisfied from the record that the trial court arrived at the right conclusion in holding that a seasonable and reasonable order to stop payment was given, including information as to who was the drawer of the check. In his opinion the trial judge said:

"The check was accurately described with reference to number, payee, amount, and, in my opinion, the drawer thereof. It will be observed that according to the testimony of plaintiff and at the opening of his conversation with Mr. Hoagland, he introduced himself by name, spelling the same. This was not denied by Mr. Hoagland. The court also finds that Mr. Shude used the expression 'my check.' "

Judgment is affirmed, with costs to appellee.

McDONALD, C. J., and CLARK, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.