HUGO C. ENSTROM, *et ux.*, v. FRANCES L. DUNNING, by her next friend, GEORGE M. DUNNING.

186 So. 806.

Division B.

Opinion Filed February 3, 1939.

Rehearing Denied March 10, 1939.

*Goodloe Warden, Jr.,* for Appellants;
*Inman Padgett,* for Appellee.

PER CURIAM.—This is the second appearance of this case here. For its former appearance see Enstrom v. Dunning, 124 Fla. 571, 169 So. 385.

We decided in that case that the cause should be reversed and the statuory penalties for usury imposed, Secs. 6937-6939 C. G. L. On rehearing of the case, the question of estoppel was considered and we said there:

"It is contended by the appellee that before appellee acquired the note and mortgage which is the subject of this

suit, her representative interviewed the maker of the mortgage and note, Hugo C. Enstrom, and advised Mr. Enstrom that his client, Frances L. Dunning, was contemplating acquiring the note and mortgage in settlement of a part of her interest in the estate of Mathilda J. Ellinger, deceased, and who was the grantee and payee of the mortgage and note, but, before doing so, wished to know whether or not the note and mortgage were good and valid obligations and that thereupon the maker of said note and the grantor who executed the said mortgage advised the representative and agent of the said Frances L. Dunning that the mortgage was a 'bang-up' mortgage, meaning that same was a valid mortgage.

"The appellant contends that this condition did not exist and that such representation was not made by Mr. Enstrom to the representative of Frances L. Dunning.

"If such representation was made, or if it should be found as a matter of fact that after the death of Mrs. Ellinger and before Mrs. Dunning acquired the note and mortgage, Mr. Enstrom made payments of principal or interest, or both, to apply on said obligations, without questioning or challenging the validity of the note and mortgage, thereby treating them as valid and binding obligations and thereby causing Mrs. Dunning to believe them to be good and valid obligations, and thereby influencing her to take and accept the same for value as a part of what was due her from the estate of Mrs. Ellinger, then Enstrom was estopped thereby from setting up the defense of usury as against the note and mortgage here involved."

On rehearing, the judgment of reversal was modified to the extent that it was reversed and remanded for further consideration on the question of estoppel.

Defendants were permitted to file a supplemental answer, which denied that Hugo C. Enstrom ever told Henry C.

Frey that the mortgage in question was a "bang-up mort-
gage," or that he used any other similar language indicating
that it was a good and defenseless mortgage; denied that
Hugo C. Enstrom ever saw Henry C. Frey after the death
of Mathilda J. Ellinger until his appearance before the
Special Master in this cause; denied that any payments were
made by defendants or either of them on said mortgage in-
debtedness, either principal or interest, after the death of
Mathilde J. Ellinger, the original mortgagee, and prior to the
time plaintiff acquired the mortgage; denied that defendants
or either of them ever by word of mouth, writing, act, con-
duct, silence or otherwise did or failed to do or say any-
thing that could possibly operate as an estoppel against de-
fendants to plead usury; that even if Hugo Enstrom had
made said alleged statement or a similar statement (which
defendants deny), it could not operate as an estoppel
against defendants, because of Section 1, Article X of the
Constitution, which provides that neither a homestead, such
as this property, nor any interest therein, is alienable by
estoppel or otherwise, by act of the husband alone, or even
by joint acts of the husband and wife, unless such joint acts
be in writing and the execution thereof by the wife be
properly acknowledged separate and apart from her hus-
band and before a notary public or other lawfully authorized
official.

The cause was recommitted to the Special Master, Hon.
C. L. Brown, Esq., who, after hearing additional testimony,
made his report to the court, the material parts of which
are:

"1. The question of estoppel was not pleaded, nor pre-
sented, nor argued when this cause was previously sub-
mitted to me, and therefore was not considered or reported.
Since the return of the Mandate from the Supreme Court
of Florida, the defendants have filed a supplemental answer,

and anticipating the plaintiff's claim of estoppel, the defendants have pleaded facts in denial of the plaintiff's unpleaded contention. Although the issue of estoppel is thus raised in a negative form, I find as a finding of law that the issue is now before the Court as a matter of pleading and evidence.

"2. Upon this issue of estoppel there is a conflict in the evidence as to whether the defendant, Hugo C. Enstrom, used the words 'bang-up mortgage' in describing the mortgage to the agent of the plaintiff, Frances L. Dunning. The evidence as to the use of these particular words is based upon testimony of Henry C. Frey, a witness for the plaintiff, whose testimony is somewhat vague and uncertain, and the positive denial of the defendant, Hugo C. Enstrom, as to the use of the words. I find as a finding of fact that the plaintiffs have not established by a preponderance of the evidence that the defendant Enstrom used these particular words.

"3. I further find as a finding of fact, upon undisputed evidence that Mathilda J. Ellinger, the mortgagee named in the mortgage which is the subject matter of this suit, died on November 20, 1930, just one year after the mortgage matured. Prior to the death of the said Mathilda J. Ellinger, the defendant, Hugo C. Enstrom, regularly and promptly paid semi-annual interest on the indebtedness secured by the mortgage, without questioning the validity of the debt or mortgage. On November 18, 1930, the defendant, Hugo C. Enstrom, mailed a cashier's check for Two Hundred ($200.00) Dollars to Mathilda J. Ellinger by registered mail. The check was sent in payment of semi-annual interest due on November 20, 1930. The registered letter enclosing the check was delivered after the death of Mathilda J. Ellinger. The defendant, Hugo C. Enstrom, was notified of the death of Mathilda J. Ellinger by letter

dated December 2, 1930, from Henry C. Frey, the New York attorney for Mrs. Ellinger, also the New York attorney for the plaintiffs herein. The interest check for Two Hundred ($200.00) Dollars was put in the course of collection about the middle of December 1930, and was cashed by the Bank of Origin on December 19, 1930. Afterward, by letter of January 15, 1931, from Henry C. Frey, the defendant Hugo C. Enstrom was notified that the two daughters of Mathilda J. Ellinger were discussing the division of her estate. The defendant Enstrom, after receiving notice of Mrs. Ellinger's death, did not instruct any one that the check forwarded to Mrs. Ellinger should not be cashed, and the defendant Enstrom did not then or afterward question the validity of the mortgage and debt until a short time before this foreclosure suit was filed. Instead, the defendant Enstrom made two further payments of semi-annual interest to the plaintiff, Frances L. Dunning. These two payments were made after the mortgage was formally assigned to Frances L. Dunning.

"4. The formal assignment of the mortgage in litigation, made by George M. Dunning, as sole executor of the estate of Mathilda J. Ellinger, deceased, to the plaintiff, Frances L. Dunning, is dated February 28, 1931. The recording of this assignment was delayed until April 10, 1931. There is a conflict in the evidence as to whether the defendant Enstrom conferred with Henry C. Frey in February 1931, before the formal assignment of the mortgage to Frances L. Dunning. I find as a finding of fact that the defendant Enstrom did confer with Henry C. Frey after the death of Mathilda J. Ellinger, and before the formal assignment of the mortgage to Frances L. Dunning, and in the course of such conference the defendant Enstrom stated that the mortgage was well secured. The defendant Enstrom contends that in making such statement he did not

mean to imply that the mortgage was without the defense of usury, and that he only meant that the value of the encumbered property exceeded the amount of the mortgage. But under the circumstances then existing, and in particular his knowledge that the daughters of Mathilda J. Ellinger were discussing the division of her estate, and were about to alter their respective positions, it is my conclusion that there was a duty on the part of the defendant Enstrom to make his position definite and clear, and that in view of the opinion of the Florida Supreme Court in this case, the use of misleading expressions on his part may operate as an estoppel against him.

"5. I further find as a finding of fact that the plaintiff, Frances L. Dunning, relied upon the report of her attorney, Henry C. Frey, that the mortgage was valid and well secured, and that she altered her position to her prejudice by accepting this mortgage for value as her divisible part of the estate of her mother, and that she paid two or three hundred dollars to her sister, (the other heir) in order to equalize the division of the estate. I also find as a finding of fact that the plaintiff, Frances L. Dunning, had resided with her mother, Mathilda J. Ellinger, for some time before the mother's death, and that she was acquainted with the correspondence that passed between her mother and the defendant Enstrom, and she also had knowledge that the semi-annual interest payments on the mortgage had previously been promptly paid and that no question as the validity of the mortgage and debt had ever been raised, and I find that the plaintiff relied upon the apparent validity of the mortgage and note in accepting them as her divisible part of the estate of her mother.

"6. The supplemental answer of the defendants filed since the return of the Mandate from the Supreme Court further pleads that the property described in the mortgage

which is the subject matter of this suit, is the homestead of the defendants, Hugo C. Enstrom and Espanola Enstrom, his wife. The question therefore is whether the defendants, and particularly the defendant, Espanola Enstrom, may claim homestead rights in the property in answer to the plaintiff's charge of estoppel. As already stated herein, there is no pleading on the part of the plaintiff which raises the issue of estoppel and the plaintiff's claim of estoppel rests upon the evidence. The legal effect of the supplemental answer, which is joint and several as between the defendants, is to anticipate and answer the plaintiff's unpleaded contention that each defendant is estopped to set up usury as a defense. The defendant, Espanola Enstrom, answering the plaintiff's unpleaded claim of estoppel, alleges that she has homestead rights in the property, and that the conduct of her husband cannot operate as an estoppel against her. Although this is an irregular method of pleading, I find as a finding of law, that the defendant Espanola Enstrom has raised the issue that there was no conduct on her part which would operate as an estoppel against her asserting a defense of usury with regard to the property in which she claims a homestead interest.

"7. I find as a finding of fact, upon undisputed evidence, that the property in question is the homestead of the defendants, Hugo C. Enstrom and Espanola Enstrom, his wife, under the Constitution and Laws of Florida. The defendant, Espanola Enstrom, joined in the execution of the mortgage describing her homestead, and she separately acknowledged the mortgage in the manner required by law, but it is my opinion and I make the finding of law, that her execution and acknowledgment of the mortgage does not of itself estop her from asserting usury in defense of her homestead. And I further find as a finding of fact that the defendant, Espanola Enstrom, did not participate in any of

the conferences between her husband and the plaintiff's representative, Henry C. Frey, nor between her husband, and the plaintiff, Frances L. Dunning, nor in the correspondence between her husband and either Mathilda J. Ellinger, Henry C. Frey, or the plaintiff, Frances L. Dunning, indeed, there is no evidence that she had any knowledge of any of the conferences or any of the correspondence. There is no evidence that she consented to or approved the conduct charged as an estoppel against her husband. I also find that the plaintiff, Frances L. Dunning, through her representative, Henry C. Frey, knew or had the means of knowing that the property in question was in fact the homestead of the defendants, and that neither the plaintiff nor Henry C. Frey made any inquiry of the defendant, Espanola Enstrom, concerning the validity of the mortgage. I further find that the defendant, Espanola Enstrom, did nothing, either by word, act or conduct, to induce the plaintiff, Frances L. Dunning, to accept the mortgage in the settlement of the estate of Mathilda J. Ellinger. I therefore find as a finding of fact and law, that the defendant, Espanola Enstrom, has done nothing which can operate as an estoppel against her.

"8.  Upon the premises, it is my opinion, and I make the finding of law, that the defendant, Espanola Enstrom, is not precluded by estoppel from asserting usury in defense of her homestead, and that the defense of usury is available to her for the protection of her homestead, even though her husband may be estopped by his conduct from claiming usury as a defense, and it having been found upon undisputed evidence that the property which is the subject matter of this suit is in fact the homestead of the defendant, Espanola Enstrom, and it having been heretofore, found and settled as the law of this case that the debt and mort-

gage herein is usurious, I therefore recommend that the cause be dismissed at the cost of the plaintiffs."

Exceptions were taken to this report of the Special Master, both by plaintiff and by defendants.

After notice was given and hearing had, the Chancellor entered final decree in the cause, in the following language:

"Subsequent to the coming down of the mandate of the Supreme Court in this cause, and in pursuance thereof, the case was recommitted to C. L. Brown, Esq., as Special Master, to make a report of his findings of fact and law upon the question presented in the opinion and judgment of the Supreme Court, and the Master having filed the testimony taken before him and having made his report on the facts and the law, and exceptions having been filed by both the plaintiff and the defendants to certain portions of the Master's report, and this cause having come on before me for hearing upon the said exceptions to the Master's report, and the Court having reconsidered the record in connection with the report of the Master, and after argument of counsel, and the Court being fully advised in the premises, finds: That Hugo C. Enstrom is estopped from claiming usury as a defense to the foreclosure of the mortgage involved herein, and that his wife, Espanola Enstrom, is likewise estopped from claiming and asserting usury in defense of her alleged homestead, and it is, therefore,

"ORDERED, ADJUDGED AND DECREED, that Hugo C. Enstrom be and he hereby is estopped from asserting usury as a defense to the foreclosure of the mortgage involved herein, and that the portion of the Master's report which sustains this view is hereby ratified and approved, and the execptions to the Master's report filed by Hugo C. Enstrom and Espanola Enstrom, his wife, be and they hereby are overruled. And it is

"Ordered, Adjudged and Decreed, that under the law and facts in this cause Espanola Enstrom is estopped from claiming or asserting usury in defense of her alleged homestead interest in the property, and the report of the Master finding that Espanola Enstrom is not precluded by estoppel from asserting usury in defense of her homestead and that the defense of usury is available for her for the protection of her homestead even though her husband be estopped by his conduct from claiming usury as a defense, be and the same is hereby disapproved and disallowed, and the exceptions of Frances L. Dunning to the Master's report be and the same hereby are sustained. And it is further,

"Ordered, Adjudged and Decreed, that the motion of the plaintiff to strike certain portions of the supplemental answer filed by the defendants since the coming down of the mandate be and the same hereby is denied. And it is further,

"Ordered, Adjudged and Decreed, that the sale of the property involved in this cause heretofore made to Frances L. Dunning be, and the same hereby is ratified, confirmed and approved. And it is further,

"Ordered, Adjudged and Decreed, that Hugo C. Enstrom and Espanola Enstrom, his wife, and all persons or corporations claiming any interest by, through or under them or either of them since the filing of the *lis pendens* in this cause, be and they hereby are barred and enjoined from claiming or asserting any right, title, or interest in and to the property involved herein. And it is further,

"Ordered, Adjudged and Decreed that the costs of all proceedings herein, including the sum of Fifty Dollars ($50) hereby allowed to C. L. Brown as Master, be taxed against the defendant, Hugo C. Enstrom.

"Done and Ordered, at Miami, Dade County, Florida, this 13th day of November, A. D. 1937."

Appeal was taken from this final decree.

In the opinion on rehearing, when this case was before us in Enstrom v. Dunning, 124 Fla. 571, 169 So. 385, we said, in substance, that if the representation attributed to Hugo C. Enstrom was made; or if, after the death of Mrs. Ellinger and before Mrs. Dunning acquired the mortgage and note, the defendant Enstrom made payments on principal or interest or both, without challenging the validity of the mortgage, thereby treating them as valid and binding obligations, thereby causing Mrs. Dunning to believe them to be good and valid obligations, and thereby causing her to accept the same for value as a part of what was due her from the estate of Mrs. Ellinger, then Hugo C. Enstrom was estopped from asserting the defense of usury.

The report of the Special Master, after reconsidering the case and taking additional testimony, found that two days before the death of Mrs. Ellinger, Hugo C. Enstrom mailed to her his check for $200.00 in payment of semi-annual interest on the indebtedness. The letter was delivered in New York state after the death of Mrs. Ellinger, and about four weeks after delivery was put in course of collection. This payment was not made under such circumstances as to warrant us, under our former decision herein, in holding that Hugo C. Enstrom was thereby estopped to set up the defense of usury. There was nothing connected with this payment to Mrs. Ellinger, though received after her death, that could have induced plaintiff to decide to take this mortgage and note as her part or portion of the estate of Mrs. Ellinger.

The report of the Special Master also found that the plaintiff had not proved by a preponderance of the evidence that Hugo C. Enstrom used the words "bang-up mortgage" in referring to this mortgage. The Special Master also found that after the death of Mrs. Ellinger and before the

assignment of the mortgage to Mrs. Dunning, Hugo C. Enstrom did confer with Henry C. Frey, and in the course of the conference stated that the mortgage was well secured. Defendant, Hugo C. Enstrom, contends that he did not mean thereby that the mortgage was without the defense of usury, but meant that the value of the property exceeded the amount of the mortgage. The master concluded, how-ever, that since the defendant knew that the daughters of Mrs. Ellinger were about to make a division of the estate and alter their respective positions, there was a duty on the part of the defendant Enstrom to make his position definite and clear, and the use of a misleading expression might operate as an estoppel against him.

The record shows that the note and mortgage were executed on November 20, 1926, due and payable three years from date, and the record further shows that both were past due when Mrs. Ellinger died in 1930, and also when they were taken by Mrs. Dunning in 1931 as part of the property due her in the division of the estate. This fact should have put Mrs. Dunning on notice that she should make inquiries of others than of the mortgagor alone, as to the validity of the note and mortgage.

"An assignee taking a mortgage after the debt secured is overdue is not protected under the doctrine of bona fide purchase, but he takes the mortgage subject to all equities and defenses which would have been available against it in the hands of the mortgagee; and this is true, although the obligation secured by the mortgage is a negotiable one." 41 C. J. 697, Sec. 718.

Mrs. Dunning, in accepting this note and mortgage after they were past due, was thus deprived of her character as a bona fide purchaser, and took the mortgage and note subject to any defense that might have been invoked against the original mortgagee. Such defense or defenses can be as-

serted by the mortgagor provided he is not estopped to assert them.

Since the mortgage and note were past due when Mrs. Dunning accepted them, Hugo C. Enstrom was under no duty or obligation to explain to her or her agent that they were tainted with usury. · The Special Master erred in his conclusion of law in this respect.

"The dishonor of the note, does put the world upon its guard; and, for that very reason, the holder takes it, liable to all the equities between the original parties. The. presumption of law is, that there are equitable defences to a dishonored note, or bill, else it would have been paid at maturity. The fact, therefore, of dishonor is notice to the holder. He, generally, takes it on the credit of the person who gives it to him. The rule is laid down with great precision and perspicuity by Lord Ellenborough, in *Timson and Francis,* 1 *Camp.* 19, in these words: 'After a note, or bill, is due, it comes disgraced to the endorsee, *and it is his duty to make inquiry* concerning it. If he takes it, though he gives a full consideration for it, he takes it on the credit of the endorser, and subject to all the equities with which it may be encumbered.'—3 T. R. 82; 7 T. R. 431; 3 T. R. n. 483; Doug. 632; 6 Bingh. 109; 5 Mass. 299; 6 ib. 451; 3 Johns. Rep. 124; 7 Johns, Rep. 26; 4 Greenlf. 415; 3 Wend. 605; 12 Wend. 523; 8 Conn. 336; 10 Wend. 86." (emphasis supplied). Bailey v. Lumpkin, 1 Ga. 392, 407-8.

The report of the Special Master found that in the conference between Hugo C. Enstrom and Henry C. Frey, Enstrom stated that "the mortgage was well secured." This ·is the substance of what the Special Master deduced from all of the testimony as to what Enstrom did say in that conference regarding the mortgage. Thus, taken in the most unfavorable light to Enstrom, the statement can

only be said to be ambiguous or of doubtful meaning or import. The master concluded that from this statement, Hugo C. Enstrom might be estopped to set up usury in defense of the foreclosure, and the Court upheld this portion of the Master's report in the final decree, holding both Enstrom and wife estopped to set up usury in defense of foreclosure.

"Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute are not to be taken by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel." 21 C. J. 1139, Sec. 139.

The Special Master made no finding, and there is no substantial evidence in the record indicating that Hugo C. Enstrom was asked whether the mortgage and note were subject to the defense of usury and he replied that they were not; or that he was asked whether they were free from any and all defenses and he replied that they were; or that he made any other statement regarding the mortgage and note that unquestionably could have had this or a similar meaning. The only way such conclusion could be reached is by supposition or inference as to what the statements attributed to Enstrom by Henry C. Frey might have meant. The fact that Mrs. Dunning relied upon the report given her by Henry C. Frey and acted to her own prejudice is not material, since it is not an established fact that Enstrom said anything that would estop him from asserting the defense of usury.

Since it has not been proven that defendant Hugo C. Enstrom used the words "bang-up mortgage" in reference

to this mortgage, as contemplated by our former opinion; and since Enstrom was not under any duty to divulge to Mrs. Dunning or her representative, Henry C. Frey, the usurious character of the mortgage and note, because they were past due when taken; and since it has not been proven that the statements attributed to Enstrom could unquestionably have meant that the mortgage and note were without any defense whatsoever, and only that, then there is nothing inconsistent with the statements attributed to the defendant Enstrom and the fact that he set up usury in defense of the mortgage foreclosure.

Therefore the final decree is reversed and the cause is remanded for appropriate proceedings.

It is so ordered.

WHITFIELD, P. J., and CHAPMAN, J., concur.

BROWN, J., concurs in the conclusion.

BUFORD, J., concurs in the opinion and judgment.

Justices TERRELL and THOMAS, not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.