THE JOHN H. MAHON CO., APPELLANT, *v.* THE HUNT-
INGTON NATIONAL BANK OF COLUMBUS, OHIO,
APPELLEE.

(Decided October 27, 1939.)

*Messrs. Bridge & Draper,* for appellant.
*Messrs. Arnold, Wright, Purpus & Harlor,* for ap-
pellee.

GEIGER, J.   The case is before us upon appeal from
the finding of the Court of Common Pleas.   A jury
having been waived the matter was submitted to the
court, and upon application the court made a separate
finding as to fact and of law.   The matter in con-
troversy is sufficiently detailed in the court's conclu-
sion of fact, which may be summarized to the effect

that on October 26, 1937, the plaintiff was a customer of the defendant bank and on that day it issued its check No. 1485 in the sum of $1,085.14 payable to the order of the Auto Mutual Indemnity Company, and drawn on its checking account; that on November 3 the plaintiff, through its president who was then in Cincinnati, instructed his office manager in Columbus by telephone to stop payment of the check; that on the following day the manager telephoned the bank to stop payment but misdescribed the check, directing the bank to stop payment of No. 1484, the check being correctly described in other respects. The defendant bank advised the Columbus manager that it would be necessary to sign a written stop-payment order. The plaintiff's bookkeeper signed such stop-payment order upon which was a printed statement to the effect that "We understand that you will use your best efforts to avoid payment, but agree not to hold you liable on account of payment contrary to this request should it be paid through inadvertence or accident." The information on the written stop-payment order was transcribed on a folder which was placed with the ledger sheet pertaining to plaintiff's checking account. Check No. 1485 was presented to the bank for payment on November 6, 1937, and was referred in regular course to one of the bookkeepers who compared the check with the description of the check contained in the stop-payment folder and finding it to be a differently numbered check from that described, concluded that it was a substitute or duplicate for the check of the same amount and date and payable to the same payee but bearing No. 1484, and paid the same, writing on the folder a symbol indicating that check 1485 was a duplicate of the check No. 1484. The court, in his conclusion of law, found that, in order to hold the bank liable for failure to stop payment, the notice to do so must be positive and unqualified and describe the check with reasonable accuracy; that although the number

of the check bears no relation to its validity, it does become a very material part of its identity; that the bank bookkeeper was justified in concluding that there were two checks of the same date and amount and payable to the same payee and that the stop-payment order applied only to No. 1484 and did not apply to 1485; that check No. 1485 was paid because of the plaintiff's negligence in misdescribing such check in a material respect and not because of any negligence on the part of the bank. The court does not consider the effect of the agreement contained in the stop-payment order, or the authority or lack thereof in the bookkeeper to bind the plaintiff by such an agreement.

The assignment of errors is that the judgment of the trial court was contrary to law and against the evidence and should have been for the plaintiff instead of the defendant.

A jury having been waived and the cause tried and determined by the court, we do not have before us any question of error in the charge. Where a court upon waiver of a jury becomes the trier of facts, and the evidence tends to prove the facts found, such facts will, in the disposition of the case, be regarded as established by the evidence unless manifestly against the weight thereof.

A check being an order by the drawer to pay his money is revocable before its presentation for payment unless the bank has accepted or certified it or otherwise becomes committed to its payment. *Kahn, Jr.,* v. *Walton,* 46 Ohio St., 195, 20 N. E., 203.

The rule is stated in 5 Michie on Banks and Banking, 357, Section 194, as follows:

"To hold a bank to its liability for failure to stop the payment of a check, the stop-payment notice should be positive and unqualified. It must be explicit, and describe the check with reasonable accuracy."

Counsel for plaintiff urge that the numbering of a check bears no relation to the check or its validity and

is solely a matter of record for the drawer and that the essential features of the check are the date, the amount, and the name of the drawer, drawee and the payee. Counsel for plaintiff rely upon *Shude* v. *American State Bank,* 263 Mich., 519, 248 N. W., 886, wherein it is held that a stop-payment order is sufficient if the check is described with reasonable accuracy, a perfectly detailed description being unnecessary. This case involved interpretation of a statute in reference to stop orders. We do not regard this case as establishing the claim asserted by plaintiff.

As to the obligation of the bank to stop payment of a particular item, we adopt the principle enunciated in the case of *Fourth & Central Trust Co.* v. *Rowe, Admr.,* 122 Ohio St., 1, 170 N. E., 439. While this case has reference to the liability of a savings bank, we think that the principles are applicable and may be paraphrased to the effect that the reasonable rules and regulations of a bank agreed to by a depositor, form a contract between the parties, but the bank is not exonerated from the exercise of good faith and reasonable care in payment of the funds upon the presentation of a check, and the burden is on the bank to show such good faith and reasonable care. It is stated in *Hough Ave. Savings & Banking Co.* v. *Anderson,* 78 Ohio St., 341, 85 N. E., 498, 125 Am. St. Rep., 707, 18 L. R. A. (N. S.), 431, in reference to payments by a savings bank on a forged order:

"The bank is at least bound to act in good faith and to exercise reasonable care with the view to avoid payment to a person who is not lawfully entitled to receive payment; and if in such case it does not so act in good faith and exercise reasonable care, it will be liable to pay again to the rightful owner of the deposit."

As to the payment by the bank in the instant case, the rule by analogy would be that the bank is bound to act in good faith and to exercise reasonable care

after it has received a stop-payment order, to avoid payment to the wrong party or contrary to the order of the drawer. The action of the bank in paying the check has already been sufficiently detailed, and the question before the court, sitting as a jury, was whether the bank exercised reasonable care, and the court found that under the circumstances of the case it did. This being a question of fact, we are not permitted to disturb the finding of the court unless it was manifestly against the weight of the evidence. We do not so find.

The matter upon which the court did not pass was whether the printed matter on the stop-payment order signed by the agent of the drawer, to the effect that the bank would not be liable on account of the payment of the described item, "should it be occasioned through inadvertence or accident." We regard this as a reasonable rule that might properly be binding upon one who has sought to stop the payment of the check, and we are also of the opinion that the bookkeeper of the drawer of the check in signing the stop-payment order was impliedly authorized to bind the drawer by such a reasonable regulation. It is, however, not necessary to pass upon the question as to whether payment was occasioned "through inadvertence or accident," the question being simply whether the bank had exercised good faith and reasonable care in the payment of a check on which the drawer had sought to stop payment but which had been misdescribed by giving an erroneous number.

We see no occasion to disturb the judgment of the court below.

*Judgment affirmed.*

HORNBECK, P. J., and BARNES, J., concur.