421 So.2d 633 (1982)
CAPITAL BANK, Appellant,
v.
Lee SCHULER, Appellee.
No. 81-92.
District Court of Appeal of Florida, Third District.
October 26, 1982.
Rehearing Denied December 6, 1982.
*634 Greenberg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff and Sue M. Cobb, Miami, for appellant.
Dixon, Dixon, Hurst, Nicklaus & Webb and James A. Dixon, Jr., Miami, for appellee.
Before BASKIN, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
Mrs. Schuler drew check no. 102, payable to one Charles Mouyos in the amount of $700, on her checking account at Capital Bank. Believing that this check was lost, Schuler cashed another check in the amount of $750 and gave Mouyos $700 in cash. Unbeknownst to Schuler, Mouyos had deposited the $700 check in his account at another bank. The check, having run its course through normal banking channels, arrived at Capital Bank at a time when Schuler had insufficient funds in her account to cover it. Accordingly, the check was stamped "insufficient funds" and returned to the Federal Reserve Bank of Miami, the last endorser.
Eleven days later, Schuler placed a stop-payment order on the $700 check she had issued to Mouyos. On the stop-payment form provided by Capital, Schuler specified the correct account number, check number, and payee. She placed a question mark in the space provided for the date of the check. She wrote  incorrectly and, as will be seen, significantly  that the amount of the check as to which she sought to stop payment was $750.
About ten days after Schuler wrote the stop-payment order, check no. 102 was presented to Capital Bank for payment and, there then being sufficient funds in Schuler's account, paid by Capital. The next day, a Capital Bank clerk, while in the process of hand sorting checks for filing and return to the last endorser, noticed the stop-payment order for check no. 102 and, failing to notice that the check had been paid, stamped the check "Payment Stopped." Schuler's account was then erroneously credited $700 and the check forwarded to the Federal Reserve Bank.[1] Months later, due to an unexplained delay in the system, the Federal Reserve Bank returned check no. 102 to Capital. Capital Bank, recognizing that it paid the check, debited Schuler's account $700, reversing the erroneous credit. This debit created an overdraft in Schuler's account of $379.68. Capital sued to collect this debt. Schuler counterclaimed for the wrongful payment of a check over a stop-payment order, abuse of process, and gross negligence in breach of contract.[2] The jury rejected the bank's *635 claim and awarded Schuler damages of $15,320.32. Capital appeals from the judgment entered thereon.
The Bank contends that it was entitled to a directed verdict on its claim and Schuler's counterclaim. It says that, as a matter of law, it could rightfully make payment despite the stop-payment order since the order failed to describe the check with certainty as required by Section 674.403(1), Florida Statutes (1977), and was, therefore, neither valid nor binding.[3] Because we conclude that the Bank is correct in this contention and neither waived the protection afforded it by the statute nor was estopped by its conduct from relying on the statute, we do not reach the Bank's other grounds for reversal which go to the extent and nature of damages awarded Schuler.

I.
Section 4-403 of the Uniform Commercial Code (1978) provides:
"A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item... ."
The code provision, unlike Section 674.403(1), Florida Statutes (1977), does not separately address how the check is to be described, that question being subsumed in the broader phrase that the stop-payment order must be made "in such manner as to afford the bank a reasonable opportunity to act on it."[4] A 1965 report of the Uniform Commercial Code Committee, Report On Variations To Code In Adopting States, Report # 2 of the Permanent Editorial Board for the U.C.C. (West 1965), indicates that the Code's framers intended to place no greater burden on the depositor in describing the check than that which is found in the Code. In its report the Committee examined modifications to the Code made in California (requiring, as Florida, that the check be described with "certainty") and the District of Columbia (requiring that the check be "specifically described") and rejected each version as going beyond the "fixed policy" represented by the Code provision. It is apparent, then, that the policy of the Code is not that the check be specifically described or described with certainty, but only that the description be such as to afford the bank "a reasonable opportunity to act on it." In this respect, the Code effected no significant change in the existing common law respecting stop-payment orders, under which the duty of the customer was to describe the item with "reasonable accuracy." See, e.g., Hawkland, Stop Payment Orders Under the Uniform Commercial Code, 3 U.C.C.L.J. 103 (1970). Thus *636 it is that in states which have adopted the Code as written, common law cases construing "reasonable accuracy" may be looked to to determine whether under the Code provision the check was described "in such manner as to afford the bank a reasonable opportunity to act on it." See Sherrill v. Frank Morris Pontiac-Buick-GMC, Inc., 366 So.2d 251 (Ala. 1978).
But, as we have said, Florida has not adopted the Code provision as written. Instead, our legislature saw fit to require that the stop-payment order shall not be effective and may be disregarded unless it "describes with certainty the item on which payment is to be stopped." Fundamental rules of statutory construction require that where a statute materially changes the language of the uniform act upon which it is patterned, we must presume that the legislature intended the change to have meaning. Wheaton v. State, 420 So.2d 604 (Fla. 3d DCA 1982) (Case No. 81-1907, opinion filed July 27, 1982); see Carlile v. Game & Fresh Water Fish Commission, 354 So.2d 362 (Fla. 1977).
Certainty is defined as freedom from any doubt; a sure thing, belief in which is based on thorough examination of all evidence. American Heritage Dictionary of the English Language 220 (1979). Thus, the requirement of "certainty" found in Section 674.403(1) does not permit us to say "close enough" and judicially make "certainty" the equivalent of "reasonable accuracy" or judicially muddle the clear and unequivocal meaning of the word by adding the antecedent "reasonable."[5] We must instead conclude that our legislature in enacting Section 674.403(1) intended to place a greater burden on the depositor in describing the check in a stop-payment order than that which existed at common law and that which exists in the Uniform Commercial Code.[6] We must further conclude that the instant stop-payment order being in error as to the amount of the check failed to describe it with certainty and was neither effective nor binding. Cf. Rimberg v. Union Trust Co. of the District of Columbia, 12 U.C.C.R.S. 527 (D.C.Sup.Ct. 1973) ($250 check described as $235 on stop-payment order was not specifically described as required by D.C. statute).
In arriving at these conclusions, we do not overlook the fact that Section 674.403(1) *637 contains the Code language that the order must be served upon and received by the bank "in such manner as to afford the bank a reasonable opportunity to act on it." By including both this language and the antecedent certainty requirement, the Florida Legislature has, in our view, determined that a bank cannot be deemed to have a reasonable opportunity to act on a stop-payment order unless the item is described with certainty. If the description of the item is uncertain, the opportunity afforded the bank to act is not reasonable.
But even if, arguendo, we were to read the "reasonable opportunity" clause of the statute as qualifying the "certainty" requirement, rather than the converse, we would still be compelled to conclude that under the circumstances of the present case the bank was not afforded a reasonable opportunity to act on the stop-payment order.
The undisputed evidence in the present case reveals that the computerized systems used by Florida banks require that the first bank to get a check write the amount of the item in magnetic ink. All banks thereafter, including the payor bank, use the amount of the check as the key feature of identification. When a customer stops payment, the computer is given the description of the check in terms of the amount. If the customer is mistaken as to the amount, the computer will not be able to effectuate the stop order. This process is designed to provide the most efficient service to the greatest number of customers at the least cost.
Thus, whether or not an uncertain description of the date, check number or name of payee would nonetheless afford the bank a reasonable opportunity to act on the order, it is undisputed that the amount of the check is critical, and an error in this regard will mean that the bank has no reasonable opportunity to act on the order.
"[T]he kind of information that is needed by the bank often will depend on its size, its technology, and the like and that therefore the resolution of specific fact situations under one set of circumstances may not be valid for another." Hawkland, supra, at 117.
Where, then, the bank has adopted a procedure for flagging checks pursuant to stop orders, the reasonableness of which is not challenged, that procedure is a factor, if not the controlling factor, in determining whether the bank was afforded a reasonable opportunity to act.
"To a certain extent, the validity of stop orders should depend on the procedures that the drawer uses to identify stopped checks and on the reasonableness of such procedures. An incorrect check number is no cause for complaint by a bank that examines checks solely by the name of the payee, but it would be to a bank that hunts for stopped checks principally by reference to check numbers." J. White & R. Summers, Uniform Commercial Code § 17-5, at 680 (2d ed. 1980).
If the amount of the check triggers the computer in flagging the check as having a stop-payment order outstanding, then whatever else may be uncertain, the amount must not be.
"[I]f the stop is entered into a computer the `manner' in which the depositor gives it [the stop order] must be precise. Thus, one would assume the depositor has to give at least the correct dollar amount, and perhaps also the correct check number, for the computer to do its thing." Quinn's Uniform Commercial Code Commentary and Digest, 1982 Cum.Supp. # 1, S4-61 (1982).
"Where a customer has written many checks in the same amount the computer will retrieve all of these items if one is stopped, but at that point hand sorting is possible. If, on the other hand, the customer is mistaken as to the amount, this kind of hand sorting is not possible, and there is every reason to believe that his countermand is ineffective." Hawkland, supra, at 118.

II.
Our holding that Schuler's stop-payment order was, as a matter of law, ineffective does not end our inquiry. Schuler asserts that the bank was estopped to claim this ineffectiveness as a defense to her damage counterclaim. Since the statute requiring certainty of description is intended for the *638 benefit of the bank, clearly the bank may be estopped to claim the statute's benefit.
Estoppel is applicable where by word, act, or conduct one person causes another to believe in a certain state of things and thereby induces the other person to act to his detriment. See State ex rel. Watson v. Gray, 48 So.2d 84 (Fla. 1950); Richards v. Dodge, 150 So.2d 477 (Fla. 2d DCA 1963). The doctrine is applied with great caution, Mathews v. Kingsley, 100 So.2d 445 (Fla. 2d DCA 1958), and if the conduct is ambiguous and thus susceptible of two constructions, one of which is inconsistent with the right asserted by the party sought to be estopped, there is no estoppel, Enstrom v. Dunning, 136 Fla. 253, 186 So. 806 (1939). As this court has stated, estoppel is applied "only where to refuse its application would be virtually to sanction fraud." McAllister Enterprises, Inc. v. McAllister Hotel, Inc., 219 So.2d 114 (Fla. 3d DCA 1969). Unless the party seeking to assert the estoppel is misled, see Hamilton v. Corcoran, 177 So.2d 64 (Fla. 2d DCA 1965), estoppel will not lie.
The only act of the Bank which arguably could have misled Schuler into believing that the amount stated in the stop-payment order did not have to be correct was the bank's acceptance of the order with a question mark in the blank provided for the date of the check. Were it the bank's position that lack of certainty as to the date of the check rendered the stop order ineffective, an argument that Schuler was misled by the bank's acceptance of the order into believing that the date of the check was inconsequential to the bank would be compelling. See, e.g., Rimberg v. Union Trust Co. of the District of Columbia, supra (where depositor informed bank teller that she was uncertain whether the amount of the check was $235 or $250 and teller told her to complete the stop order without informing depositor of the importance of the amount or suggesting that she prepare stop orders for each amount, court held that depositor was actively led to believe that stop order was effective regardless of the correctness of amount, and bank had waived statute's requirement that check be specifically described). But the argument that the bank's acceptance of the order misled Schuler into believing that the amount of the check was inconsequential requires that we attribute to the Bank's action the singular meaning that no information on the stop order was important to it. The Bank's action, however, was certainly equally susceptible of the meaning that only the date of the check was inconsequential to it. Since there is nothing in the Bank's acceptance of the order or any other conduct which unquestionably and unambiguously points to the former meaning, the estoppel argument must fail.[7]Enstrom v. Dunning, supra. See Jarrard v. Associates Discount Corp., 99 So.2d 272 (Fla. 1957) (facts necessary to constitute an estoppel cannot be taken by argument or inference, nor supplied by intendment).
Accordingly, the judgment entered in favor of Schuler on her counterclaim is reversed with directions to enter judgment in favor of Capital Bank on both its claim and counterclaim.
Reversed with directions.
NOTES
[1] The Bank is not accused of negligence resulting from the obviously futile act of its clerk stamping "Payment Stopped" on a check that has been paid and thereafter sending the check to the Federal Reserve Bank.
[2] The original complaint contained a count for malicious prosecution which the trial court dismissed as premature. See Neil v. South Florida Auto Painters, 397 So.2d 1160 (Fla. 3d DCA 1981); Blue v. Weinstein, 381 So.2d 308 (Fla. 3d DCA 1980).
[3] Section 674.403(1), Florida Statutes (1977), governing stop-payment orders, reads:

"(1) A customer, or any customer if there is more than one, or any person authorized to sign checks or make withdrawals on or from an account, may stop payment of any item payable, for or drawn against such customer's or customers' account but the same shall not be effective and the bank may disregard the same unless the order is in writing, is signed by such customer or authorized person, describes with certainty the item on which payment is to be stopped, and is served upon and received by an officer of the bank at the bankinghouse during regular banking hours and in such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to the happening of any of the events described in § 674.303, and in any event no bank shall be responsible or liable for failure to comply with any such order on the day the same is served upon or received by such bank unless such omission or failure to comply with the same on the day received resulted from the willful and intentional disregard of such order." (emphasis supplied).
[4] Forty-four states and the Virgin Islands have adopted Section 4-403 U.C.C. (1978) as written. In addition to Florida, four states (Arizona, California, Nevada and Texas) require that the check be described with "certainty." See, respectively, Ariz. Rev. Stat. Ann. § 44-2629 (1967); Cal.Com.Code § 4403 (West 1964); Nev. Rev. Stat. § 104.4403 (1979); Tex.Bus. & Com.Code Ann. § 4-403 (Vernon 1968). Utah and the District of Columbia require that the check be "specifically" described. Utah Code Ann. § 70A-4-403 (1980); D.C. Code Ann. § 28:4-403 (Supp.VII 1980).
[5] "Certain is often preceded by more or most or terms such as fairly and reasonably, even though by definition certain is seemingly absolute in most of its senses." American Heritage Dictionary 220 (1979). The rejection of the "certainty" requirement found in the like California statute, see Report On Variations To Code In Adopting States, supra, demonstrates the substantial nature of our legislative change.
[6] This is not to suggest that Schuler's stop-payment order necessarily satisfied the less stringent "reasonable accuracy" test, or provided the bank with a "reasonable opportunity" to act on it. Compare Elsie Rodriguez Fashions, Inc. v. Chase Manhattan Bank, 23 U.C.C.Rep. 133 (N.Y.Sup. 1978) (ten-cent difference between amount on stop-payment order and amount on check reasonably accurate); Thomas v. Marine Midland Tinkers National Bank, 86 Misc.2d 284, 381 N.Y.S.2d 797 (N.Y. Civ. Ct. 1976) (single digit mistake in check number afforded bank reasonable opportunity to act); Kentucky-Farmers Bank v. Staton, 314 Ky. 313, 235 S.W.2d 767 (1951) (correct date, number, and name of payee, but wrong amount, reasonably accurate); Shude v. American State Bank, 263 Mich. 519, 248 N.W. 886 (1933) (incorrect date insignificant where bank erroneously placed hold on wrong account); Levine v. Bank of United States, 132 Misc. 130, 229 N.Y.S. 108 (N.Y.Mun.Ct. 1928) (payee described as "Harold Orkand" reasonably accurate description of check payable to "H. Orkand") with Sherill v. Frank Morris Pontiac-Buick-GMC, Inc., supra (misstatement of date and first name of payee and omission of check number not reasonably accurate, although amount of check correct); John H. Mahon Co. v. Huntington National Bank, 62 Ohio App. 261, 23 N.E.2d 638 (1939) (jury finding that erroneous check number not reasonably accurate upheld); A. Sidney Davison Coal Co. v. National Park Bank, 201 A.D. 309, 194 N.Y.S. 220 (1922) ($15,000 as amount of draft on stop-payment order not reasonably accurate to describe $17,000 check); Mitchell v. Security Bank, 85 Misc. 360, 147 N.Y.S. 470 (Sup.Ct., App.Term 1914) (wrong date, payee, and amount, but proper check number, not reasonably accurate); Western Union Telegraph Co. v. Louissell, 11 Ala.App. 563, 66 So. 839 (1914), cert. denied, 191 Ala. 665, 67 So. 1019 (1915) (stop payment describing payee as "James F. Manison" not reasonably accurate description of draft payable to "James J. Manson").
[7] Indeed, the evidence reveals that had Schuler given the Bank any inkling that she was unsure of the amount, she would have been advised to close her account, since the stop order would not have worked.