Mr. Rob Wolfe Assistant County Attorney Monroe County Attorney's Office Post Office Box 1026 Key West, Florida 33041-1026 Ms. Nina L. Boniske Marathon City Attorney and Village Attorney for Islamorada and Village of Islands 2665 South Bayshore Drive, Suite 420 Miami, Florida 33133
Dear Mr. Wolfe and Ms. Boniske:
On behalf of the Monroe County Board of County Commissioners, the City of Marathon, the Village of Islamorada and the Village of Islands, you ask substantially the following question:
May a county expend second gas tax funds for the construction and maintenance of any road within the county or may such funds only be used for roads within the county road system?
Article XII, section (9)(c)(5), Florida Constitution provides in part:
"The proceeds of the "second gas tax" subject to allocation to the several counties under this paragraph (5) shall be used first, for the payment of obligations pledging revenues allocated pursuant to Article IX, Section 16, of the Constitution of 1885, as amended, and any refundings thereof; second, for the payment of debt service on bonds issued as provided by this paragraph (5) to finance the acquisition and construction of roads as defined by law; and third, for the acquisition and construction of roadsand for road maintenance as authorized by law."[1] (e.s.)
The phrase "and for road maintenance as authorized by law" was added to this constitutional provision in 1980. Prior to that amendment, this office had stated that a county's use of surplus second gas tax funds was limited to the construction of roads and that these revenues could not be lawfully used for the maintenance or repair of existing roads and bridges.[2]
You refer to Attorney General Opinion 80-22, in which this office concluded that a county could use surplus second gas tax funds for the acquisition and construction of roads within the "county road system."[3] At that time, section 339.089(2), Florida Statutes 1979, provided that "[a] surplus which is not otherwise used to provide connecting roads pursuant to subsection (1) shall be usedon the county road system, as defined in s. 334.03(23)." (e.s.) Thus, this office concluded that surplus second gas tax funds could not be used for the construction of roads within the city limits of an incorporated municipality.
In 1984, the Legislature undertook a comprehensive revision of the state transportation code. Section 339.089, Florida Statutes 1979, was transferred to Chapter 336, Florida Statutes, which relates to the county road system, and renumbered as section336.023, Florida Statutes.[4] Senate Bill 352, 1984 Session, initially only renumbered the statute. It was subsequently amended to change the language of the statute and, as passed by the Legislature, authorized the expenditure of surplus second gas tax funds "on any road in the county at the discretion of the county governing body." Thus, rather than providing that surplus second gas tax funds shall be used on the county road system, section336.023, Florida Statutes, now provides that such funds may be used on any road in the county at the discretion of the county's governing body. You ask whether the conclusion in Attorney General Opinion 80-22, limiting the expenditure of these funds to roads within the county road system, is still valid in light of the 1984 amendment.
As you note, there is a presumption that when the Legislature amends a statute, it intends to accord the statute a meaning different from that accorded before the amendment.[5] Moreover, an examination of the legislative history surrounding the enactment of the 1984 legislation indicates a legislative intent to permit the use of second gas tax funds to be used for any road in the county and not merely for those roads within the county road system.[6]
It is a fundamental principle of statutory construction to ascertain the Legislature's intent and to effectuate it.[7] Although the 1984 amendment transferred the statute to the chapter relating to the county road system, a review of the legislative history clearly indicates the change in the language of the statute was intended to expand a county's authority to use surplus second gas tax funds on any road in the county. Article XII, section 9(c)(5) of the Florida Constitution, which authorizes the use of surplus second gas tax funds for the acquisition and construction of roads and for road maintenance as authorized by law, refers only to roads and does not require that such expenditures be limited to the county road system.[8]
Accordingly, I am of the opinion that section 336.023(2), Florida Statutes, which seeks to implement Article XII, section 9(c)(5), Florida Constitution, authorizes the governing body of a county, in its discretion, to use surplus second gas tax funds on any road within the county, including those within a municipality.[9]
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See s. 206.41(1)(a), Fla. Stat., stating that imposed on motor fuel is "[a]n excise or license tax of 2 cents per net gallon, which is the tax as levied by s. 16, Art. IX of the State Constitution of 1885, as amended, and continued by s. 9(c), Art. XII of the 1968 State Constitution, as amended, which is therein referred to as the _second gas tax,' and which is hereby designated the _constitutional fuel tax.'"
[2] See, e.g., Ops. Att'y Gen. Fla. 79-104 and 79-43 (1979).
[3] See s. 334.03(23), Fla. Stat. 1979, which defined the county road system as "all collector roads in the unincorporated areas and all extensions of such collector roads into and through any incorporated areas, all local roads in the unincorporated areas, and all urban minor arterials not in the state highway system. See now s. 334.03(8), Fla. Stat.
[4] See Ch. 84-309, Laws of Florida.
[5] See, e.g., Sam's Club v. Bair, 678 So.2d 902 (Fla. 1st DCA 1996) (by enacting a material amendment to a statute, Legislature is presumed to have intended to alter a law unless the contrary is made clear); Capital Bank v. Schuler, 421 So.2d 633 (Fla. 3d DCA 1982); Capella v. City of Gainesville, 377 So.2d 658 (Fla. 1979); Op. Att'y Gen. Fla. 85-44 (1985) (it is presumed that when the Legislature amends a statute, it intends to accord the statute a different meaning from that accorded to it before the amendment).
[6] See, e.g., No. 30 of Attachment to Memorandum from House Committee on Transportation re February Subcommittee Meetings, dated February 15, 1984, stating that "[c]ounties should be authorized to expend any funds received under the constitutional gas tax within municipalities for municipal transportation"; and Summary of House Amendments to SB 352 (passed as Ch. 84-309, Laws of Florida), Amendment #1, sponsored by Senator Wallace ("Clarifies county authority to expend the constitutional gas tax on any public road in the county"). And see Tapes 4 and 5 of 8, House Transportation Committee, Subcommittee on Road and Bridge Repair and Preservation, dated February 20-21, 1984, in which a discussion occurred regarding Attorney General Opinion 80-22 and the need to amend the statute to authorize the counties to expend these funds on roads within the county which were not in the county road system; and Tape 1 of 2, House Transportation Committee, Subcommittee on Road and Bridge Repair and Preservation, dated March 12, 1984, in which the subcommittee adopted an amendment which would permit surplus second gas tax funds to be used for city roads. Cf., Letter from Raymond Sittig, Executive Director of the Florida League of Cities, to Robert Coggins, Staff Director of House Committee on Transportation, dated January 13, 1984, suggesting amendatory language to "overcome an Attorney General's opinion advising that counties did not have authority to expend their transportation revenues on the municipal street system[.]"
[7] Ervin v. Peninsular Telephone Company, 53 So.2d 647 (Fla. 1951) (Supreme Court has duty in construction of statutes to ascertain Legislature's intention and effectuate it); State v.Webb, 398 So.2d 820 (Fla. 1981) (legislative intent is the polestar by which the courts must be guided).
[8] A sentence in Attorney General Opinion 80-22 apparently has caused some confusion as to whether Art. XII, s. 9(c)(5), Fla. Const., limits the use of the constitutional gas tax to roads within the county road system. In fact, the constitutional provision only refers to roads and does not refer to the county road system. And see s. 206.47(7), Fla. Stat., stating in part:
"The remaining fuel tax funds credited to each county are surplus fuel tax funds and shall be distributed as provided by s. 9(c), Art. XII of the State Constitution or by law pursuant to that section and shall be used for the acquisition, construction, and maintenance of roads. For the purposes of this subsection, the term "maintenance" includes periodic maintenance and routine maintenance, as defined in s. 334.03, and may include the construction and installation of traffic signals, sidewalks, bicycle paths, and landscaping. The funds may be used as matching funds for any federal, state, or private grant specifically related to these purposes."
The 1980 opinion cited Attorney General Opinions 79-43 and 79-104 as authority. While Attorney General Opinion 79-43 generally discusses the constitutional gas tax, an examination of Attorney General Opinion 79-104 indicates that it was the language of s. 336.089, Fla. Stat. 1979, as adopted by s. 9, Ch. 77-165, Laws of Florida, that made it "clear that the Legislature intended to assure that the surplus second gas tax revenues be used for . . . the county road system." As discussed supra, that statute (now s.336.023, Fla. Stat.) has been amended to remove the reference to the county road system.
[9] To the extent that previous opinions are inconsistent with the conclusion reached herein, they are hereby modified.