100 So.2d 369 (1958)
Alfred MACINA and John Follo, trading and d/b/a Court Square Auto Parts, Appellants,
v.
James F. MAGURNO and Elsie A. Magurno, his wife, Appellees.
Supreme Court of Florida.
February 14, 1958.
*370 William J. Castagna, Clearwater, for appellants.
Victor O. Wehle of Askew, Wehle, Earle & Holley, St. Petersburg, for appellees.
O'CONNELL, Justice.
Appellants, Alfred Macina and John Follo, doing business as Court Square Auto Parts, were defendants in the trial court, and James F. Magurno and Elsie A. Magurno, appellees here, were plaintiffs.
The suit was for specific performance of a provision, regarding rent payments, contained in a five year lease executed by the parties in August 1950. The lease was effective November 1, 1950. The plaintiffs were lessors, the defendants lessees. Defendants operated an automobile parts supply business and a machine shop in the leased premises.
The lease provided that lessees would make minimum monthly rent payments in amount of $160 and at the end of each year that:
"* * * Lessees, at their expense, shall furnish to Lessors a complete audit by a reputable Certified Public Accountant showing the gross amount of sales made by Lessees during the preceding rental year in the business conducted by Lessees on the above described premises, * * *" [Emphasis supplied] and if the audit revealed that 4 1/2% per cent of the said gross sales in any such year exceeded the monthly rental payments, that Lessees would pay the difference as additional rent. The construction of the italicized portion of the above lease provision is the principal bone of contention between the parties to the suit.
The plaintiffs' complaint in effect was that although defendants had paid the monthly rental payments and had also paid some additional monies, that defendants had failed to furnish annually "a complete audit by a reputable certified public accountant showing the gross amount of sales" as required by the lease, and that they believed such an audit would show they were entitled to substantial additional sums for rent under the percentage provision of the lease. The plaintiffs asked the court to require the defendants to provide such an audit and to pay any additional sums found to be due.
In their answer, among other things, the defendants denied that they had failed to provide annual audits as required by the lease, alleged that they had furnished annual audits for the years 1951, 1952, 1953 and 1954, prepared by reputable certified public accountants or by a tax consultant specifically approved by the plaintiffs, and that the audit for 1955 was not yet due. They alleged that plaintiffs had in fact established the amounts due them for rent and had accepted payment thereof without question.
The defendants also asserted, as affirmative defenses, that by accepting the annual audits presented to them by defendants without expressing any dissatisfaction prior to filing of the instant suit and by accepting from defendants the sums shown to be due by said audits:
(1) Plaintiffs had waived and abandoned strict compliance with the lease provisions and therefore in equity were estopped from asserting any further claim;
(2) Plaintiffs were guilty of laches in presenting their claims; and
(3) Defendants having made payments to plaintiffs in good faith based on said audits, and plaintiffs having accepted such payments in full and complete settlement of rent due plaintiffs by their acceptance were estopped to assert any further claim.
*371 To their answer, defendants attached what they contend is an audit made by a Certified Public Accountant, covering the entire four year period. This audit on its face was only an addition, by the Certified Public Accountant, of all defendants' sales tickets for the four years, together with a schedule of missing sales tickets which the C.P.A. presumed to have been mutilated and voided.
Defendants made a motion for summary final decree on the theory that the relief sought by plaintiffs, i.e., an audit, had been made and was attached to the answer, and that since all sums due under the audit had been paid, there was no issue to be decided by the court. The plaintiffs filed no affidavits in opposition to the defendants' motion.
Depositions of one of the plaintiffs and one of the defendants were before the court when the motion for summary final decree came on to be heard by the chancellor.
In his "opinion and order" entered after the hearing, the court denied the defendants' motion for summary final decree, found that the audit furnished by the defendants was not "* * * a complete audit * * * showing the gross amount of sales made by lessees * * *" as required by the lease, found that there was "* * * no material issue as to the insufficiency of the audit in the mind of the court * * *" and directed defendants to furnish plaintiffs a "* * * complete audit of their business for the years in question * * * which audit will show, among other things, the gross amount of sales for the years indicated * * *" In his order, the Chancellor did not dispose of the defendants' affirmative defenses.
It is the foregoing order from which this appeal is taken.
Defendants contend (1) that since plaintiffs filed no affidavits controverting or in opposition to their motion and affidavit, there was no genuine issue of material fact and therefore their motion for summary decree should have been granted; (2) the Chancellor erred in construing as he did the lease provision as to the audit; (3) the Chancellor erred in entering sua sponte a final decree for plaintiffs without taking testimony or giving defendants the opportunity to be heard on their direct and affirmative defenses; and (4) that the order of the Chancellor was so vague, ambiguous and uncertain that it was impossible of compliance. This last point need not be treated by us as will become obvious from the remainder of this opinion.
As to the defendants' first contention, we agree with the Chancellor that defendants were not entitled to a summary final decree as a matter of law on the basis of the record as then before the Chancellor. It is true that if it be conceded that the audit furnished by defendants complies with the lease, and it not being denied that plaintiffs have been paid all sums shown to be due by the audit furnished by them, not only would there have been no genuine issue of material fact, but they would have been entitled to a judgment as a matter of law.
But it is clear that the real issue in this case is the sufficiency of the audit to meet the terms of the lease above set forth, and it would have been error for the Chancellor to have entered a decree for the defendants.
This brings us to defendants' second contention which we understand to be that it was not only error for the Chancellor to construe the subject provision of the lease as he did, but that it was error for him to construe it at all since the issue of the construction of the pertinent lease provision was not raised by the pleadings. It is true that no specific or pointed issue is made of the necessity for construing the provision, but the plaintiff did raise the question as to whether the audit was complete. It is obvious, too, that the parties are at variance as to its meaning and it is equally obvious that the construction of the provision is fundamental to settling the dispute in issue, *372 unless the plaintiffs be found, on equitable principles, to have made it immaterial for the years which had already passed.
We therefore hold that it was not error for the Chancellor to have considered and construed the lease provision, nor do we disagree with his construction thereof, except in one particular as hereinafter set forth.
The Chancellor in his order, in effect, found that the audit provided for in the lease meant something more than a compilation of sales tickets written by defendants. It is true that an addition of sales tickets, if accurately and honestly made and kept as to each sale made, would accurately reveal gross sales, and we do not herein intend to indicate that the defendants did not accurately and honestly make and keep such records. But there are methods which those of the accounting profession, using accepted accounting practices and procedures, can with reasonable accuracy prove and determine the correctness or incorrectness of reported sales in a business, provided of course that there are available basic records with which to work. Among these methods is a comparison of total cash receipts as deposited in banks or otherwise disposed of with reported total sales. Another is to compare cost of goods sold, plus markup customary to the individual business or to the trade, against total reported sales. The result of requiring such an audit in determining gross sales was to give plaintiffs the assurance that a reputable member of an honorable and learned profession would, using methods and procedures used by that profession, determine and verify the amount of gross sales, rather than merely relying upon figures furnished by defendants.
We therefore agree with the Chancellor that the lease required defendants to have made annually a complete audit of their records and that based upon said audit they should furnish plaintiffs with a document, call it by any name, in which the Certified Public Accountant who made the audit should set forth that he made a complete audit in accordance with accepted accounting practices, detailing the procedure followed and the records checked, and that based upon such audit the gross sales were a figure named therein. The document should be certified by the C.P.A.
Unless the C.P.A. should find it to be necessary to do so, the document presented to the plaintiffs need not contain any other information concerning the defendants' business. It is on this point alone that we differ with the Chancellor. As we construe the lease provision, the plaintiffs are rightfully entitled to know only the amount of gross sales of defendants. They are however, entitled to know that the figure presented as representing gross sales was determined and verified by a reputable Certified Public Accountant, after a complete audit of the defendants' records.
Defendants' third question is that the Chancellor erred in entering the order requiring them to make and furnish a complete audit without giving the defendants an opportunity to be heard on and to prove their direct and affirmative defenses. We think there is merit to this contention.
Defendants, in their answer, asserted the affirmative defenses of waiver, estoppel and laches.
Plaintiffs argue that defendants have not and cannot assert and prove that the actions of the plaintiffs in receiving the purported audits and accepting rentals based thereon have in any way harmed the defendants or benefited the plaintiffs. Unquestionably one of the essential elements of estoppel is that the party asserting it must show reliance on conduct of the other and change of position in reliance thereon. L.B. Price Mercantile Co. v. Gay, Fla. 1950, 44 So.2d 87, 90; Robertson v. Robertson, Fla. 1952, 61 So.2d 499, 504; Gross v. City of Miami, Fla. 1953, 62 So.2d 418, 419.
However, it is entirely possible that the defendants may be able to prove the elements of estoppel here. They have already *373 been put to the expense of making annual audits, plus the one attached to their answer. They say that to be required to prepare another one now would be an unwarranted expense to them. They point out that, prior to commencement of this litigation, plaintiffs did not object either to the nature of the audit furnished them or to the amount of the rents paid under said audits. Checks for balance of rent offered by defendants and accepted by plaintiffs for years 1952, 1953 and 1954 had thereon language indicating payment of balance of rent and payment in full for the periods covered.
Further, the depositions indicate that defendants' accounting system was not the best and it may well be that it is impossible to ascertain by audit the correctness or incorrectness of the sales tickets. If this be found to be the case, it might be shown that the continuance by defendants of an inadequate accounting system, i.e., inadequate for purposes of making a complete audit, was due to the acceptance by plaintiffs of the purported audit furnished to them annually by the defendants, instead of earlier forcing defendants to render a proper audit.
It is entirely possible that the defendants might have shown the plaintiffs to be estopped to now ask for a document showing the gross amount of sales determined and verified by a complete audit as we have held they were entitled to under the lease.
In Masser v. London Operating Co., 1932, 106 Fla. 474, 145 So. 72, 79, this court said that while waiver, being the intentional relinquishment of a known right, does not arise from forbearance for a reasonable time, it might be inferred from conduct or acts putting one off his guard and leading him to believe that a right has been waived. Further, it was said that where the conduct of the party is such as to create an estoppel no consideration for the waiver is necessary. While it seems that proof of an estoppel would give the defendants the same result, nevertheless, it may be possible for them to prove a waiver by plaintiffs.
Defendants might also have proved that the plaintiffs were guilty of laches in not sooner asserting their rights under the subject lease provision.
We cannot say as a matter of law that the defenses of estoppel, waiver or laches as pleaded by the defendants, considering the record before the Chancellor, were so incredible as to be unworthy of acceptance by reasonable minds, on the one hand, or on the other, would be without legal probative force, if true, so as to justify the Chancellor in entering a summary decree against the defendants. Johnson v. Studstill, Fla. 1954, 71 So.2d 251. Defendants should be given the opportunity to prove their defenses.
Accordingly, this cause is reversed and remanded with directions that further proceedings be had in accordance with this opinion.
THOMAS, Acting C.J., and ROBERTS, THORNAL and DREW, JJ., concur.