ANDREWS, Acting Chief Judge.
This is an appeal by the plaintiffs, Dolores ‘K. Murphy et al., from a final decree in favor of defendants, Royal American Industries, Inc., and John D. MacArthur.
Plaintiffs were the controlling stockhold- • ers of the Fort Pierce Port & Terminal Co. John D. MacArthur was President of Royal American Industries. On August 1, 1962, Royal American, MacArthur, Terminal Co. . and plaintiffs entered into a written agreement under which plaintiffs agreed to ex- ■ change 1,293,980 shares of their Terminal ■- Co. stock on a basis of three shares for one share of Royal American stock. The agreement included the following provisions :
“(4) That ROYAL AMERICAN further agrees that it will cause the stock to be transferred to said STOCKHOLDERS to be registered with the American Stock Exchange without reservation or restriction in order that said stock may be freely exchanged or traded thereon. ROYAL AMERICAN further agrees that if it becomes necessary it will register or cause to be registered said stock with the Securities Exchange Commission and such other governmental agency as may be required. ROYAL AMERICAN further agrees that if it is unable to procure such registration as is required in accordance with the terms of this agreement it will pay to the said STOCKHOLDERS the sum of $2.50 per share of ROYAL AMERICAN stock called for under the terms of this agreement.
“(5) ROYAL AMERICAN further agrees to proceed with the registration of the stock within sixty days from date of the closing of this transaction, and to proceed with such registration continuously and diligently. ROYAL AMERICAN further agrees that if said registration is not completed within six months • from the date of the closing of this transaction it will pay to the STOCKHOLDERS the sum of $2.50 for each share of ROYAL AMERICAN stock. * * * ”
The provision to buy back the stock if not registered within sixty days was personally guaranteed by defendant, MacArthur. At the closing on November 7, 1962, the certificates for the shares of Royal American stock which were delivered to and accepted by plaintiffs bore a “restrictive legend” to the effect that the shares had been acquired by plaintiffs for purposes of investment, had not been registered under the Securities Act of 1933 and could not be transferred in the absence of an effective registration statement under that act.
*886 Plaintiffs at closing signed a receipt commonly referred to as an investment letter which, in addition to describing the contract and the particular securities being exchanged, contained the following paragraph :
“This will also acknowledge that I have represented to and agreed with you that I am purchasing such shares for investment with no present intention of selling or otherwise disposing of the same, subject only to my rights under such Agreement and Addendum.”
The Royal American stock was not registered with the American Stock Exchange or the Securities and Exchange Commission within six months so as to become freely exchanged or traded on the American Stock Exchange. The fact that the subject securities were registered with the Securities and Exchange Commission by prospectus effective December 23, 1963, is immaterial.
Plaintiffs made a demand upon Royal American and MacArthur for the purchase of the stock at $2.50 per share. Royal American and MacArthur failed to comply with the demand, and plaintiffs sought a decree requiring the defendant to purchase their Royal American stock at $2.50 per share.
The trial court found that Royal American had not complied with the agreement and would be liable to repurchase the shares for failure to obtain their registration within six months under the provisions of paragraph 5, except that the contract had been modified at closing by the investment letter.
Royal American had issued certain securities in exchange for property to Bankers Life & Casualty Insurance Company in a transaction not involving any public offering which it desired to loan to the company for use in exchange for the Terminal Co. stock. On September 27, 1962, New York counsel for Royal American advised that such was possible, but only on a restricted basis, and that authorized but unissued stock could not be issued without registration under the Securities Act. It was then that the Royal American approached the stockholders of Fort Pierce Terminal requesting that they acknowledge the stock of Royal American which they would receive would be for purposes of investment and not for resale. Under the contract of August 1, 1962, they might have to hold their stock before resale for six months awaiting the registration of the securities they were to receive in accordance with the terms of the contract.
In order for the securities of Royal American to be transferred in exchange for the stock of Fort Pierce Terminal such stock would have to be registered under the Securities Act of 1933, 15 U.S.C.A. § 77f, as amended, or the Securities and Exchange Act of 1934, as amended, 15 U.S.C.A. § 781 or qualify as an exempt transaction by an issue not involved in a public offering, 15 U.S.C.A. § 77d. When a company already has stock listed on a national securities exchange, it can apply for listing of additional securities under procedures under the Securities and Exchange Act of 1934, which in substance has the same requirements as registration with the Securities, and Exchange Commission. 2 LOSS, SECURITIES REGULATIONS 787 (2d Ed. 1961). Therefore, the stock of Royal American could only be issued prior to the-effective date of registration statement under either of these acts if it could be said that the securities were acquired by the purchasers for purpose of investment and with no present intention to dispose of the-same.
Under the circumstances the contract of August first could have been closed by delivery and exchange of the stock only in violation of the Securities Act, supra, in that it had not been registered in compliance with either of the said acts. The receipt reciting an intention not to dispose of said stock was executed at the request of Royal American in an effort to avoid such violation. Such receipt did not constitute a modification of the contract in that there *887 ■was no consideration for a change or modification. Gunby v. Drew, 1903, 45 Fla. 350, 34 So. 305; Robinson v. Flyer, 1895, 35 Fla. 544, 573, 17 So. 745, 750. An estop-■pel did not arise in that by signing the in■vestment letter plaintiffs received no benefit but merely acknowledged a known fact that they might not be able to sell their ■stock until registered, and such action by the plaintiffs was not to the detriment of the defendants. Enstrom v. Dunning, 1939, 136 Fla. 253, 186 So. 806, 812. The same ■did not constitute a waiver of the provisions of the contract in that there was no showing of the intentional relinquishment •of a known right. Macina v. Magurno, Fla.1958, 100 So.2d 369.
Accordingly, we reverse with directions •that the court enter a decree requiring Royal American, and upon its failure to perform, John D. MacArthur, to purchase the stock of Royal American Industries, Inc., from the plaintiffs at a price of $2.50 a share, together with interest thereon from the date demand was made for payment, or May 1, 1963, whichever is later.
WALDEN, J., and RAWLS, JOHN S., Associate Judge, concur.