### WASHINGTON MEDICAL SCIENCE BUILDING ASSOCIATES, a Limited Partnership, Appellant,

v.

### OWL & TORTOISE CORPORATION, Appellee.

### No. 5134.

District of Columbia Court of Appeals.

Argued April 20, 1970.

Decided Aug. 25, 1970.

Nicholas D. Ward, Washington, D. C., with whom John L. Hamilton, Washington, D. C., was on the brief, for appellant.

Herman Miller, Washington, D. C., for appellee.

Before KELLY, KERN and NEBEKER, Associate Judges.

KELLY, Associate Judge.

This landlord and tenant dispute concerns the meaning of two lease provisions

---

requiring the tenant at stated intervals to supply the landlord with statements of gross sales. The statements related to the amount of rent due since the lease provided for a set minimum annual rent, payable in monthly installments, plus a percentage of gross sales over a certain amount.

Washington Medical Science Building Associates (landlord) sought possession of Store No. 2, 916 19th St., N.W., from the Owl & Tortoise Corporation (tenant), on the ground that the tenant had "defaulted in its covenant and agreement to furnish Landlord with certified audits of its gross sales." It was contended at trial that the tenant had both failed to furnish the landlord on the tenth day of each and every month with a statement of its gross sales for each preceding month as required by paragraph 5(e) of the lease, and, of more importance, had failed to comply with the provisions of paragraph 5(f) of the lease requiring

> (f) That on or before thirty (30) days after the expiration of the aforesaid first full year of the term hereby created and on or before thirty (30) days after the expiration of each succeeding year of the term or any renewal thereof, Tenant shall furnish to Landlord a complete statement taken from the Tenant's books and records and prepared and certified to as correct by the auditor of the Tenant, showing all aforesaid "gross sales" made by the Tenant during the first full year of the term and each succeeding year of the term or any renewal thereof and concurrently with the furnishing of said statement the Tenant shall pay to the Landlord or its duly authorized agent, the full amount of such additional rent, if any, required to be paid by it, as aforesaid, for each such year of the term or renewal thereof.

There was testimony at trial that neither monthly nor annual statements had been furnished when due, but shortly before trial, apparently by agreement, the tenant did submit to the landlord an itemized statement of gross sales, by month, from June of 1967 through May of 1969. The statement, signed by the tenant's auditor, contained the following language:

> I have prepared the following statement of gross sales as recorded in the books and records of the Owl and Tortoise Corporation for each year of the term of its lease through May 31, 1969, and certify that this statement is correct according to the books and records of the Owl and Tortoise Corporation which I have maintained since February, 1968.

Monthly statements were also introduced in evidence showing gross sales for June and July 1969.[1]

The court took the case under advisement and subsequently ordered the complaint dismissed, finding that both parties had breached the terms of the lease agreement but that all such breaches were either nonmaterial or waived,[2] and that the tenant had complied with the terms of the lease by supplying the required data and statements. The court said that "had a full audit been required the lease should have so provided."

The landlord does not here argue that it should be furnished an annual audit of gross sales as the complaint seems to say, but contends that paragraph 5(f) of the lease requires that the tenant submit a certified statement of annual gross sales which is based upon a complete audit prepared and certified to by someone other than the person who keeps the tenant's books. No such audit was performed.

---

1. Suit was filed July 8, 1969, but trial was not held until September 8, 1969.

2. We take this finding to refer to the tenant's failure to furnish the statements when due, the payment of rent in cash instead of by check, and the landlord's failure to give notice of the alleged breach of covenant by certified or registered mail. Thus any breach of paragraph 5(e) of the lease was waived.

The testimony revealed that the tenant followed a procedure of making a daily summary sheet of all sales, of subsequently recording them on a monthly summary sheet, and of forwarding those documents, together with guest checks (waitress and bar), tapes from a pre-check machine and from the cash register, cash receipt records, payroll records, checkbook stubs, cancelled checks and bank statements, to its accountant who maintained the books and records of the corporation. From these records the accountant made his certification to the landlord of the accuracy of the statements of gross sales.

The alleged ambiguity in the contested lease provision would ordinarily be resolved by a consideration of the intent of the parties to the lease and of the circumstances surrounding its execution. However, the tenant's president, who testified here was not the original owner of the tenant corporation and did not sign the lease. And the one general partner of the landlord partnership who did sign the lease said only that he did not "believe" that the statements furnished by the tenant complied with paragraph 5(f) of the lease.

Each of three certified public accountants [3] was allowed to give fact and opinion evidence on the question with inconclusive results.

The one case cited by the landlord which has a direct bearing on our problem is Macina v. Magurno, 100 So.2d 369 (Fla. 1958). The distinction between *Macina* and this case is that in *Macina* the lease required the tenant to *"furnish to Lessors a complete audit by a reputable Certified Public Accountant showing the gross amount of sales * * *."* [4] This distinction is crucial, for the language of the *Macina* lease clearly provides that annual statements of gross sales submitted by the tenant must be based upon a complete audit. Paragraph 5(f) of the lease here under consideration contains no such requirement, nor can such requirement reasonably be inferred.

We agree with the trial court that a reasonable interpretation of the disputed lease provision is that the unaudited statements of gross sales submitted by the tenant are in compliance with its terms. [5]

Affirmed.

3. The tenant's accountant, who had made the certification, the landlord's accountant and an independent accountant testified.

4. 100 So.2d at 370.

5. In view of our disposition of this case we need not discuss the question of waiver resulting from the acceptance of rent.