99 So.2d 272 (1957)
Wendell JARRARD, William Jarrard and Wayne Jarrard, doing business as Jarrard Motors, Appellants,
v.
ASSOCIATES DISCOUNT CORPORATION, Appellee.
Supreme Court of Florida.
December 20, 1957.
*273 Fisher & Hepner, Pensacola, for appellants.
Jones & Harrell, Pensacola, for appellee.
O'CONNELL, Justice.
Associates Discount Corporation, as plaintiff, brought an action in replevin against Wendell Jarrard, et al., as defendants, seeking return of eight (8) automobiles. Although Jarrard, et al., are the nominal defendants, one Tom Cherry is the real defendant and will be referred to as such in this opinion.
After a trial without jury, a judgment was rendered for the plaintiff. Motion for new trial was denied and this appeal followed.
The able trial judge set forth the facts, as well as his conclusions, in an opinion which he filed with the judgment for plaintiff. There is no dispute between the parties as to the facts which are set forth in the trial judge's opinion. These facts are summarized below.
Tom Cherry, a used car dealer operating in Tennessee, in three separate transactions, sold a total of ten (10) automobiles to Bill Fade Motors, Inc., of Pensacola, Florida, hereinafter referred to as the dealer. Each of these transactions was accomplished by telephone conversations between Cherry in Tennessee and the dealer in Florida. In each case Cherry, at request of the dealer, engaged drivers for the automobiles which drivers at the dealer's expense drove the cars to Pensacola and delivered them to the dealer together with an executed document entitled "Bill of Sale, State of Tennessee." In each of the three transactions the dealer, on delivery of the cars to it, gave one of the drivers for delivery to Cherry a draft in the amount due Cherry for the cars delivered on that occasion. The trial court found that each transaction was a cash transaction and that under Tennessee law as between Cherry and Bill Fade Motors, Inc., title to each of the automobiles remained in Cherry until *274 such time as Cherry received actual payment of the checks or drafts given to Cherry.
The first of the three transactions involved three automobiles. It began on July 22, 1954 by telephone call from the dealer in Pensacola, Florida to Cherry in Tennessee. After delivery of the automobiles in Pensacola in exchange for the check or draft, as above outlined, the dealer on July 27, 1954 executed a Trust Receipt to Associates Discount Corporation, the plaintiff, covering said three automobiles and on the same day received therefor a check from the plaintiff in amount of the loan. This check was delivered by the plaintiff to the dealer, although the plaintiff had not seen the automobiles or any indicia of title covering them. It is pertinent to note, also, that the bills of sale which Cherry executed covering these automobiles and sent with them to the dealer showed the purchaser to be East Side Motors and not Bill Fade Motors, Inc. and the check given by the dealer in exchange therefor was payable to East Side Motors. The record shows that East Side Motors is a business in Tennessee owned by Cherry.
Although the plaintiff had not examined the indicia of title to these automobiles prior to accepting the Trust Receipt and issuing its check therefor, the trial judge found that the plaintiff, through its Pensacola office manager, did examine the three automobiles and bills of sale at the lot of Bill Fade Motors, Inc. on the following day July 28, 1954.
On August 4, 1954, Cherry first learned that the check given by Bill Fade Motors, Inc. in payment for the first three automobiles had been returned unpaid. Cherry called Bill Fade Motors, Inc. and talked with Bill Fade who assured him that while some small insufficiency must have existed in the account, it would be made sufficient, and asked Cherry to put the check through again.
During this conversation, on August 4th, the dealer entered into a second transaction in which it ordered and Cherry agreed to sell three more automobiles under the same arrangement as followed in the first transaction. Further, on August 5, 1954 a third transaction was had in which Cherry agreed to sell the dealer an additional four automobiles under the same arrangement as followed in the sale of the first three cars. On delivery of the cars involved in the last two transactions Cherry sent bills of sale which were properly executed to Bill Fade Motors, Inc. as purchaser and the checks given by the dealer were made to Cherry.
On August 6, 1954 Bill Fade Motors, Inc. executed a Trust Receipt to plaintiff covering the three automobiles ordered in the August 4th telephone conversation and on August 12th executed a third Trust Receipt to plaintiff covering the four automobiles ordered in the August 5th telephone conversation. Bill Fade Motors, Inc. received checks from the plaintiff for the last two Trust Receipts on delivery thereof to plaintiff. There is no specific evidence that the plaintiff examined the indicia of title to the cars involved in the last two Trust Receipts either prior to or after issuing its checks therefor. The trial judge found, however, that it was the business policy of plaintiff to examine such documents within twenty-four hours after issuance of its check, if it did not do so before issuance of the check, but he stated "there is no specific evidence that in this particular instance this was done".
Thereafter, the first check given by Bill Fade Motors, Inc. to Cherry had been returned unpaid a second time, and the second and third checks had also been returned unpaid. Cherry came to Pensacola on August 14th and conferred with Bill Fade, President of Bill Fade Motors, Inc. As a result of this conference Cherry received a cashier's check for two of the automobiles and in addition took back the keys to and bills of sale covering the remaining eight automobiles, it being agreed that the automobiles would be left on Fade's lot until August 16th on which day Fade promised he would wire Cherry the balance *275 due. This was not done and Cherry returned to Pensacola on August 16th or 17th, removed the cars from Fade's lot and sold them to Jarrard Motors, the nominal defendant herein. Immediately thereafter plaintiff replevied the eight (8) automobiles under the three Trust Receipts abovementioned, whereupon Cherry returned Jarrard its check given in payment of the cars and took back the bills of sale given to Jarrard.
The only evidence offered as to Cherry's knowledge of the dealer's financing the cars with plaintiff showed that Cherry did not know that Bill Fade Motors, Inc. had encumbered or intended to encumber the cars in question to the plaintiff, although plaintiff argues that he should have known that such would be done.
The trial judge concluded that although the plaintiff did not, in either of the three Trust Receipt transactions, see the indicia of title to the automobiles prior to acceptance of the Trust Receipts and delivery of its several checks to Bill Fade Motors, Inc., nevertheless, that
"because its agent inspected the first three Bills of Sale forms made out to East Side Motors as purchaser the day following the issuance of the first check, and because it was its business policy within twenty-four hours to inspect the indicia of title in the hands of the Trustee, Bill Fade Motors, Inc., within twenty-four hours following issuance of its check upon acceptance of the following two Trust Receipts, the Court concludes that Associates Discount Corporation relied upon the indicia of title furnished Bill Fade Motors, Inc., by Tom Cherry in not moving earlier to upset the transaction and recover its funds advanced without seeing such indicia of title; and that by reason of the fact that the evidence shows that Tom Cherry was placed on guard following the return of Bill Fade Motors, Inc., first draft for the first automobiles for insufficient funds, Tom Cherry, the real party in interest as defendant, because one of two innocent parties must suffer since Bill Fade Motors, Inc., is out of business and insolvent and Tom Cherry's actions created the situation, and under the doctrine of estoppel he is precluded from relying upon his retention of title to the automobiles in question as against the lien of the Trust Receipts held by plaintiff, Associates Discount Corporation. * * *"
It is clear that the trial judge found that title to the automobiles in question was in Cherry, but that Cherry was estopped to assert his title as against the plaintiff Associates Discount.
We must first determine a question of pleading and procedure.
In a supplemental brief, Cherry contends that inasmuch as plaintiff did not specifically plead the doctrine of estoppel in reply to Cherry's answer, which alleged a superior title and right to possession, the plaintiff cannot enjoy the benefit of that doctrine and the court erred in applying it against him. Cherry cites Dicks v. Colonial Finance Corp., Fla. 1956, 85 So.2d 874 as authority for this contention.
In the Dicks case, supra, we held that estoppel is an affirmative defense which is waived if not specifically pleaded. In that case the defendant sought to avail himself of the defense of estoppel, but had failed to plead it in his answer. This factual distinction is material.
In the case now before us the plaintiff filed a complaint alleging it was entitled to possession of the automobiles involved herein by virtue of the Trust Receipts above-described. Cherry filed an answer alleging that he had a superior right to possession of the automobiles. There were no further pleadings.
Under 30 F.S.A. Fla.R.Civ.P. 1.7(a) the only pleadings allowed are a complaint and an answer, but if the answer contains a counter-claim or a cross-claim there shall *276 be a reply. The rule then provides that "no additional pleadings, other than motions provided by these Rules, shall be allowed, except that the court may order a reply to an answer." Therefore under Rule 1.7(a), supra, the plaintiff was not allowed to file a further pleading to Cherry's answer, and the court did not order the filing of a reply.
Even if Cherry's allegation of superior right to possession as contained in his answer could be construed to be a claim for relief, no responsive pleading was required to be filed to the answer, and therefore under Rule 1.11 (b) the plaintiff could "assert at the trial any defense in law or fact to that claim for relief."
While Rule 1.11(h) provides that a party shall be deemed to have waived any defense which he does not present by motion, or in his answer or reply, when construed with Rules 1.7(a) and 1.11(b) we do not feel this should be held to preclude a party from asserting at the trial a defense not raised in the pleadings, when such defense was not required to be so pleaded. To hold otherwise would require, in a situation such as now before us, that the plaintiff anticipate the defense of the defendant and plead estoppel in his complaint.
The case of Gulf Life Insurance Co. v. Ferguson, Fla. 1952, 59 So.2d 371 is directly opposite to the view expressed above. But this last cited case was decided under the Florida Common Law Rules. Since that time we have adopted the Florida Rules of Civil Procedure, and as above stated it is our opinion that under these last mentioned rules the decision in Gulf Life Insurance Co. case, supra, is not applicable. See the Committee Note to Rule 1.7(a) in 30 F.S.A. p. 64, also Arnow and Brown, Florida's 1954 Rules of Civil Procedure, 7 Fla. Law Review (1954) pp. 127, 130.
While we hold here that no procedural error was committed by the trial court in considering the defense of estoppel in this case, we are compelled to say that it would be the better practice for a plaintiff who wishes to assert an affirmative defense against matter contained in an answer to request leave of court to file a reply to the answer.
Inasmuch as there is no dispute as to the facts, we are required only to determine whether the evidence established the elements of estoppel and whether the trial court reached proper conclusions of law.
There was a material difference between the bills of sale which were sent by Cherry to the dealer with the three automobiles involved in the first transaction and those involved in the last two transactions. We will discuss the first transaction separately.
The trial court found as a fact that plaintiff accepted the dealer's Trust Receipt and paid to the dealer the sums due thereunder without first examining either the automobiles or the indicia of title thereto, but that the plaintiff, by its office manager, on the afternoon following the payment to the dealer inspected the automobiles and
"* * * examined the indicia of title in the form of Bills of Sale which in fact showed East Side Motors as the purchaser from Tom Cherry rather than Bill Fade Motors, Inc. as such purchaser, which was error on the part of Cherry's clerk, Bill Fade Motors, Inc. being the intended purchaser."
Irrespective of the fact that plaintiff by its own admission did not, in accepting the dealer's Trust Receipt and making payment thereon, rely on either the bills of sale to or possession of the automobiles involved, it is clear that plaintiff not only would not have been misled by the bills of sale but in fact would have been put on notice that Bill Fade Motors, Inc. did not have title thereto, since the bills of sale showed East Side Motors as the purchaser from Cherry. It seems clear therefore that as to the three automobiles involved in the first transaction Cherry is not estopped to assert his title thereto since his conduct in giving the dealer bills of sale to East *277 Side Motors could not have misled plaintiff to believe the dealer had title thereto.
As to the automobiles involved in the second and third transactions between Cherry and the dealer and covered by the second and third Trust Receipts given by the dealer to plaintiff, the answer is not so obvious.
Although Cherry sold the dealer three automobiles in the second transaction and four in the third, Cherry received payment for two of these leaving possession of only five automobiles at issue here, exclusive of the three already mentioned above.
In reaching his conclusion that Cherry was estopped to assert his title as against the plaintiff, the trial court found that although the plaintiff did not rely on the bills of sale or physical possession of the automobiles when it accepted the Trust Receipts and delivered its checks to the dealer, it did rely "* * * upon the indicia of title furnished Bill Fade Motors, Inc., by Tom Cherry in not moving earlier to upset the transaction and recover its funds advanced without seeing such indicia of title." The record does not support this conclusion.
The burden of proving all the facts essential to the working of an estoppel rests on the party asserting it or on whose behalf it is applied. First National Bank of Arcadia v. Savarese, 1931, 101 Fla. 480, 134 So. 501. Before an estoppel can be raised there must be certainty and the facts necessary to constitute it cannot be taken by argument or inference, nor supplied by intendment. They must be clearly and satisfactorily proved. Enstrom v. Dunning, 1939, 136 Fla. 253, 186 So. 806; Erwin v. Dekle, 1910, 60 Fla. 56, 53 So. 441.
In the case now before us there was no specific evidence that the plaintiff ever examined the indicia of title to or possession of the automobiles involved in the second and third transactions and in the second and third Trust Receipts.
The local manager for plaintiff testified that where a trust receipt was accepted and payment made thereon without examining the indicia of title of the Trustee, it was general procedure that one of the employees would put a note to that effect on his desk and that he would inspect both the automobiles and the title within twenty-four hours after payment of the check to the Trustee. He stated that he could not recall personally having seen the indicia of title on these five automobiles, that he did not know whether anyone else in the plaintiff organization had seen them and that it was possible that no one had examined them. He stated he had made no effort to determine if any other employee had done so.
Bill Fade, President of Bill Fade Motors, Inc. testified as a witness for the plaintiff. He stated that he filled out the Trust Receipt forms, took them to plaintiff and was issued a check; that he did not carry the bills of sale with him; that plaintiff checked the title papers periodically "once a week, or once every ten days, or every two weeks"; that sometimes they checked the title papers on a new car bought by the dealer within twenty-four hours and sometimes he did not know whether they did or not. He stated he did not know whether or not they checked the bills of sale from Cherry.
It was upon the above testimony as to usage or habit that the trial court concluded the plaintiff had in fact seen and relied upon the bills of sale given by Cherry to the dealer in not earlier moving against the dealer.
While practice, habit or custom may be admissible to show what occurred in a specific instance, and may form the basis of an inference, the probative value thereof must depend on the facts of each case. Caslowitz v. Roosevelt Mills, Inc., 1951, 138 Conn. 121, 82 A.2d 808, 810. See also 1 Wigmore, Evidence, (3d ed.) Sec. 92. To be admissible the usage must have sufficient regularity to make it probable *278 that it would be carried out in every instance. Further, it is our view that in order to constitute proof of performance of an act on a specific occasion, it is not sufficient merely to prove the habit, practice or custom, but there must also be some proof that the practice was followed in the particular instance in issue, and the evidence should show performance of the practice by those then charged with it. See Notkin v. Brookdale Gardens, Inc., 1953, 28 N.J. Super. 9, 99 A.2d 825.
In the case now before us the evidence shows that the plaintiff had a practice of examining titles and possession of automobiles covered by Trust Receipts within twenty-four hours after issuance of the check therefor, however, there is no evidence that the practice was followed in this instance
It is essential for estoppel to operate that the person claiming it have been influenced by the conduct, act or omission of the opposing party. It is clear here that plaintiff did not rely on the possession or bills of sale in accepting the Trust Receipts and making payment thereon, but it is possible that had it thereafter examined the bills of sale and possession it might have relied thereon. For had it appeared on such examination that the dealer did not have title to the automobiles it might well have moved to demand payment for the sums due under the Trust Receipts, and if not paid then moved against the dealer's assets. It was on this theory that the trial court decided this cause.
It appears therefore that the vital point in this case is whether plaintiff did in fact examine the bills of sale and possession of the automobiles and rely thereon, after accepting the Trust Receipts and making payment therefor to the dealer.
We are of the opinion that the evidence submitted on this point was not sufficiently certain, clear and satisfactory to prove the essential elements of estoppel and warrant a judgment by which Cherry is precluded from claiming his title to the automobiles involved in the second and third Trust Receipts.
Accordingly the judgment appealed from is reversed with direction that further proceedings be had consistent with this opinion.
TERRELL, C.J., HOBSON, J., and LUCKIE, Circuit Judge, concur.
THORNAL, J., concurs in judgment with opinion.
THORNAL, Justice (concurring).
I concur in the judgment and the reasons therefor pointed out in the opinion prepared by Mr. Justice O'CONNELL.
It would seem advisable, however, that we take cognizance of our opinion in Volusia Discount Company, Inc., v. Alexander K-F Motors, Fla. 1956, 88 So.2d 302. As I understand the situation in the instant case the trier of the facts actually found that title never passed to the dealer. Hence there was no after-acquired title to inure to the benefit of the Discount Corporation under the trust receipts executed by Bill Fade Motors, Inc. If Fade had at anytime acquired a title, it is my view that the lien of the trust receipts would have attached and it would have been superior to the claim of Jarrard who bought the cars subject to the rule of caveat emptor and not as a good faith purchaser in the course of retail trade. See also Commercial Credit Corporation v. McGriff, Fla. 1953, 66 So.2d 52; and Nash Miami Motors, Inc., v. Bandel, 160 Fla. 925, 37 So.2d 366. See also Chapter 673, Florida Statutes, F.S.A.