WOLF, J.
Appellant appeals from his judgment and sentence for second-degree murder. He raises three issues on appeal: (1) whether the trial court erred in denying his motion for judgment of acquittal based on insufficient evidence to overcome his claim of an accidental shooting; (2) whether the trial court abused its discretion by excluding the testimony of Dr. Greer regarding appellant’s calm demeanor on the night of the shooting; and (3) whether the trial court erred in admitting hearsay testimony of several witnesses pursuant to the “state of mind” exception to the hearsay rule. We find that there was sufficient evidence to support the charge. We, therefore, affirm as to this issue without further comment. We agree with appellant as to issue 2 and address it, even though it is unclear that it was preserved, in order to guide the trial court in conducting a new trial.[1] As to issue 3, we agree with appellant and reverse and remand for a new trial.
On July 5, 2006, appellant, by way. of a grand jury indictment, was charged with first-degree murder of Dawn Luciano. Appellant was accused of shooting and killing the victim, Luciano, a young woman who lived with him as a boarder. On Api-il 12, 2007, appellant proceeded to trial, which ended in a hung jury.
On April 12, 2007, during the first trial, appellant sought to introduce the testimony of Dr. Richard Alden Greer, a psychiatrist, regarding appellant’s post-shooting demeanor. During the first trial, and again in the second trial, the State placed heavy emphasis on appellant’s “calm” demeanor following a traumatic shooting. Appellant sought to introduce Dr. Greer’s testimony in an effort to characterize appellant’s “calm” demeanor as one signifying stress.
Dr. Greer’s testimony was proffered for the record. During the proffer, Dr. Greer explained that he had been a board certified psychiatrist for over 17 years. The State accepted Dr. Greer as an expert in forensic psychiatry. Thereafter, Dr. Greer stated that he had reviewed (1) appellant’s *257 911 phone call on the night of the shooting, (2) depositions of law enforcement officers regarding appellant’s demeanor on the night of the shooting, and (3) police reports noting the officers’ observations of appellant on the night of the shooting. Based on this review, Dr. Greer opined that appellant appeared to be under stress and “acting in a manner I would characterize as withdrawn, shock like manner; someone who is being flat, withdrawn, unemotional.” Dr. Greer opined that “[p]eo-ple respond to shocking or traumatic events in a variety of ways, from hysteria ... to complete catatonia or complete unresponsiveness.” In addition, Dr. Greer stated that:
A lay person might indicate that someone who had immediately or accidentally or in some way shot another person might be hysterical, might be very upset or tearful or shouting. On the other hand, in my experience and from my listening to [appellant], obviously that was not the case; that he was flat.... That, in and of itself, is an element of shock, surprise, trauma.... They may repeat themselves, as I heard in [appellant’s] voice.
The trial court excluded the testimony, finding that (1) the testimony would cause confusion in the minds of the jury and (2) Dr. Greer had not witnessed the officers’ testimony at the time of trial nor had he examined the defendant; thus, his testimony lacked reliability.
In addition, prior to the first trial, appellant filed a motion in limine seeking to exclude the hearsay testimony of several witnesses who were expected to testify at trial, to include: Kahall Aharoni, Christopher Gordon, Ashley Guba, Danille Kratz, and Judith Poli. After hearing argument on the motion, the trial court entered an Order Granting in Part and Denying in Part Defense Motion in Limine Number One Statements Purported To Be Made By Dawn Luciano, ruling that (1) Kahall Aharoni could testify that appellant had many guns and that Luciano said she was scared without identifying of what she was scared; (2) Christopher Gordon could testify that Luciano told him that appellant was so jealous he slept with a gun under his pillow and that she was planning to leave his home as soon as possible; (3) Ashley Guba could testify that Luciano told her that appellant was a jealous guy and that she was afraid of him; (4) Danille Kratz could testify that Luciano told her she wanted Kratz to take her home to keep appellant from knowing that she had been out with another man; and (5) Judith Poli could testify that Luciano explained to her that appellant was very possessive and got very angry, yelled at her, and that she was scared. Defense objections to this testimony were renewed at the time of the second trial.
As to the trial court’s concern regarding the sufficiency of Dr. Greer’s observations, we would first note that this concern would go as to the weight to be given his testimony rather than its admissibility.
Section 90.704, Florida Statutes (2006), governs the use of expert testimony and provides in pertinent part:
The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, the expert at or before the trial....
The trial court appears to believe this language limited Dr. Greer to testifying only about matters upon which he had personal knowledge: personal knowledge meaning ‘personal observation of the officers’ testimony regarding appellant’s demeanor the night of the incident. However, the statute specifically authorizes opinions based on data perceived before trial. In addition, when an expert is testifying on evidence he or she has not personally ob *258 served, the expert may state an opinion based on record facts through a hypothetical question, as long as those facts are supported by evidence that has been or will be introduced at trial. Atl. Coast Line R. Co. v. Shouse, 83 Fla. 156, 91 So. 90 (1922); N. Broward Hosp. Dist. v. Johnson By and Through Johnson, 538 So.2d 871 (Fla. 4th DCA 1988); Young v. Pyle, 145 So.2d 503, 504 (Fla. 1st DCA 1962).
Illustrative of this point, in Holt v. State, 422 So.2d 1018, 1019 (Fla. 1st DCA 1982), this court considered whether a trial court erred in permitting an “expert witness to respond to a hypothetical question which assumed facts which were not yet in evidence” and upheld the admission of the testimony stating, “[t]his contention is without merit because sufficient facts to form the basis of the hypothetical question were established later in the trial.”
Here, Dr. Greer testified that he was asked to provide his expert opinion “based on the ... behavior that was documented with regard to [appellant’s] 911 call and the observations of law-enforcement officers at the time after the shooting of Miss Luciano.” The information he reviewed prior to reaching a conclusion included “officers’ statements, depositions, as well as [a review of the] actual 911 tapes.” The evidence considered by Dr. Greer was substantially similar to the evidence later admitted at trial. Based on the foregoing, Dr. Greer could testify that appellant’s calm demeanor was consistent with a person undergoing shock.
As to the confusion Dr. Greer’s testimony might cause, we determine any confusion, if it exists, would not justify exclusion of this testimony.
Section 90.702, Florida Statutes (2006), governs the admissibility of expert testimony and provides in pertinent part:
If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
Here, the trial court inexplicably reasoned that Dr. Greer’s use of words such as “calm” and “shock” would confuse the jury based on their divergent clinical and lay definitions. Based on section 90.702, the evidence should have been admitted unless it would not assist the trier of fact in understanding the evidence or determining a fact in issue.
In Boyer v. State, 825 So.2d 418, 419-20 (Fla. 1st DCA 2002) (citations omitted), this court considered a trial court’s exclusion of a psychiatrist’s testimony regarding the phenomena of false confessions, stating in pertinent part:
Expert testimony should be excluded when the facts testified to are of such nature as not to require any special knowledge or experience in order for the jury to form its conclusions. However, the trial court is not compelled to exclude the expert just because the testimony may cover matters within the average juror’s comprehension. Even though the jury may have beliefs about the subject, the question is whether those beliefs are correct.
.... Had Dr. Ofshe’s testimony been admitted, it would have let the jury know that a phenomenon known as false confessions exists, how to recognize it, and how to decide whether it fit the facts of the case being tried. It is for the jury to determine the weight to give to Dr. Ofshe’s testimony, and to decide whether they believed his theory or the *259 more commonplace explanation that the confession was true.
In determining whether evidence will assist the trier of fact in a meaningful way, the first step is considering what the evidence, if admitted, would have tended to explain or prove.
It is clear the State opined that appellant’s calm demeanor was highly unusual and indicative of his cold-blooded nature. It is likewise clear that appellant was attempting to rebut this contention with Dr. Greer’s expert opinion by suggesting that appellant’s calm demeanor was a result of his shock and stress, not his callousness. Dr. Greer’s expert testimony on demeanor in stressful situations would allow the jury to consider two opposing views of the evidence and assist the jury in determining what weight to place on evidence of appellant’s calm demeanor. Thus, it would clearly aid in the jury’s understanding of the evidence. Furthermore, whether appellant’s calm demeanor was indicative of a cold-blooded nature or stress is probative of appellant’s guilt because the jury would be more likely to believe appellant committed the crime in anger and hate if it believed the State’s version of the evidence. If the jury accepted Dr. Greer’s opinion that appellant was in shock and under stress in the hours after the shooting, the jury would be more likely to believe appellant’s accidental shooting defense. As such, it appears the trial court erred in excluding the evidence as it (1) aided the jury in understanding two possible motivations for appellant’s behavior and (2) was probative of appellant’s guilt.
We next address the hearsay statements made by the victim in this ease. Appellee asserts the disputed hearsay statements were admissible pursuant to the state of mind exception to the hearsay rule. Section 90.803(3)(a), Florida Statutes (2006), governs the state of mind exception to the hearsay rule and provides in pertinent part:
(а) A statement of the declarant’s then-existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health, when such evidence is offered to:
1. Prove the declarant’s state of mind, emotion, or physical sensation at that time or at any other time when such state is an issue in the action.
2. Prove or explain acts of subsequent conduct of the declarant.
The state of mind exception authorizes the use of hearsay to establish the declarant’s state of mind when his or her state of mind is material to the action. Stoll v. State, 762 So.2d 870, 875 (Fla. 2000). When applied to murder prosecutions, the state of mind exception does not typically authorize the use of a victim’s hearsay statements as establishing the victim’s state of mind because the victim’s state of mind is not generally a material issue in a case. Id.
In some homicide cases involving claims of accident or self-defense, the victim’s state of mind may be pertinent, such as where there is an issue of who instigated the confrontation. See Peterka v. State, 640 So.2d 59, 64 (Fla.1994) (Florida Supreme Court allowed hearsay statements of victim to rebut defendant’s theory that victim instigated the fight); see also Huggins v. State, 889 So.2d 743, 757 (Fla.2004) (allowing hearsay statements establishing victim’s state of mind to rebut appellant’s theory that victim willingly left a local shopping area with him); Kingery v. State, 523 So.2d 1199, 1202 (Fla. 1st DCA 1988) (holding that a claim of self-defense will open the door to hearsay statements establishing the victim feared the accused). In the instant case, however, there was no *260 doubt that the initial instigator of the confrontation was appellant. The main relevance of the admission of these statements was to demonstrate the bad character of appellant. Under these circumstances, the admission of the statements constituted reversible error.
We reverse and remand for a new trial.
BROWNING, J., concurs; BENTON, J., concurs in the judgment with opinion.

. The record is unclear whether appellant renewed his objection to the exclusion of Dr. Greer's testimony at the time of the second trial.